**John H. DeBELSEY, Sr. and Harry Broomall**

v.

**CHEMICAL LEAMAN TANK LINES, INC. and Local Union 312, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.**

**Civ. A. No. 73–1131.**

United States District Court, E. D. Pennsylvania.

Dec. 13, 1973.

Peter J. Rohana, Jr., Chester, Pa., for plaintiffs.

William W. Patten, II, Cunniff, Bray & McAleese, Plymouth Meeting, Pa., for Chemical Leaman Tank Lines, Inc.

Mark P. Muller, Casper & Muller, Philadelphia, Pa., for Local Union 312.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

This is an action in which the plaintiffs request preliminary and permanent injunctive relief in connection with their claim that the defendants wrongfully denied them their seniority for the period during which they were lease operators. The plaintiffs base their claim on the ground that the defendant union breached its duty of fair representation. The issue presented is whether the defendant, Local Union 312 (Local 312),

breached the duty of fair representation in its processing of the grievances of employee-plaintiffs, John H. DeBelsey, Sr. and Harry Broomall, concerning their seniority status as truck drivers in the employ of defendant, Chemical Leaman Tank Lines, Inc. (Leaman).

The complaint in this action was filed on May 21, 1973. On June 5, 1973 the Court consolidated the trial of the action on the merits with the hearing on the motion for a preliminary injunction and scheduled the consolidated trial for June 19, 1973. The parties agreed that pending the Court's decision on the matter that the plaintiffs would remain at the Essington Terminal.

The parties stipulated in open court that the grievances filed by the plaintiffs request the identical relief that is desired in the instant suit. At the outset of the trial the Court, with the consent of the parties, limited the issue at the hearing to a determination of whether Local 312 breached its duty of fair representation in the manner in which it processed plaintiffs' grievances. It was agreed that testimony would not be taken as to whether the promise of seniority was made and as to the damages which plaintiffs may have suffered, unless and until the Court determined that Local 312 had breached its duty of fair representation.

Plaintiffs, John DeBelsey, Sr. and Harry Broomall, were originally employed by Leaman, an employer within the meaning of the Labor Management Relations Act, 29 U.S.C. §§ 142(1), (3) and 152(2), as truck drivers on February 23, 1950 and April 14, 1954 respectively. Plaintiffs allege that the union which was the collective bargaining representative for the employees during the period from 1957 through 1959 and the employer, Leaman, induced plaintiffs, John DeBelsey, Sr. and Harry Broomall, to become lease operators in December 1957 and November 1959, respectively, in return for a promise by Leaman and the predecessor union that they would retain their seniority rights with the company as of their original employment

date. Plaintiffs became lease operators in 1957 and 1959 respectively and retained their seniority status with the company until 1966, when the defendant, Local 312, a labor organization in an industry affecting commerce within the meaning of Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, became the recognized collective bargaining representative. At that time these plaintiffs as lease operators were placed on a separate seniority list which gave them secondary work rights vis-a-vis company employees, pursuant to a collective bargaining agreement.

Plaintiffs are and have been dues-paying members of Local 312 from its recognition as the collective bargaining agent, but as lease operators they did not receive the seniority rights or voting privileges enjoyed by union members in the employ of Leaman during the period when they were lease operators. Plaintiffs remained lease operators until September 1972, when they were given the option of transferring their equipment from the Essington Terminal to the Croyden Terminal (fifty miles away) or terminating their leases and returning as company employees at the bottom of the seniority list. Plaintiffs chose the latter option and became employees of Leaman on September 11, 1972.

Local 312 is the recognized collective bargaining representative for the drivers and maintenance personnel employed by the defendant Leaman at its Essington Terminal, including the plaintiffs. Local 312 and Leaman are parties to a multi-employer-union collective bargaining agreement entitled the "Eastern Area Tank Haul Agreement," (Agreement), as well as the Local 312 Supplement attached thereto. The Agreement and Local 312 Supplement control the wages, hours, working conditions and seniority rights of all drivers and maintenance personnel at the Essington Terminal.

The Agreement provides that the unions and employers who are signatories thereto shall organize a Joint Committee to be known as the "Eastern Area Tank

and Cement Haul Joint Committee" (Joint Committee) for the purpose of settling grievances and disputes not settled at the two-step local grievance procedure. The Joint Committee is composed of a minimum of three employer representatives and a minimum of three union representatives. Section 7.4 of the Agreement also provides:

A decision of the majority of a panel of the Joint Committee shall be final and binding on all parties.

On September 26, 1972 plaintiffs filed grievances with Edward Kinsley, the Chief Shop Steward (Chief Steward), pursuant to the Agreement. The grievances were based upon the alleged promise made by Leaman and the predecessor union that the plaintiffs would not lose their seniority when they became lease operators, and requested restoration of seniority according to their original employment dates.

The grievances were accepted by Local 312 and submitted to the first step of the grievance procedure. A meeting was held which was attended by the Chief Steward, two assistant stewards, and Melvin Jones, Leaman's Essington Terminal Manager (Terminal Manager). The Terminal Manager and the Chief Steward could not agree on a resolution of the grievances. This forced the grievances into the second step of the procedure.

At the second step of the procedure, the grievances were considered by Edward Burke, President and Business Agent (Business Agent) for Local 312, and the Chief Steward, the Terminal Manager and Mr. Hasset, a labor relations representative for the employer, Leaman. The grievances were discussed on the merits, but again labor and management could not agree on a disposition of the grievances which was satisfactory to both parties. This forced the grievances to the Joint Committee, the third step in the grievance procedure.

The Business Agent of Local 312 argued the grievances before the Joint Committee on November 21, 1972, contending that the plaintiffs should be given seniority rights in accordance with their original date of employment, as they had been promised. The minutes of the Joint Committee reflect that the Business Agent stated that: "The grievant was promised that he would maintain his seniority rights." The Joint Committee denied the plaintiffs' claim for seniority and stated:

When the grievants became owner-operators, they lost their status as seniority employees and had priority in accordance with the date on their lease. When the lease was cancelled and on their own exercise of the option either to go to Croyden as an owner-operator or become a seniority employee, their exercise of the option to become a seniority employee gave them seniority at Essington only as a new hire. The claim for Health & Welfare and Pension as an Owner-Operator is denied.

On April 2, 1973, Leaman advised all employee drivers at the Essington Terminal that it was opening a new terminal at Conshohocken and gave the drivers an option to transfer to the new terminal in accordance with seniority. The plaintiffs, fearing a layoff at Essington because of their low seniority status, elected to transfer to Conshohocken.

It is the policy of Local 312 in non-discharge cases that grievants and their attorneys are not generally permitted to attend any of the hearings held in the grievance procedure, and the plaintiffs did not request the union to depart from its procedure in the instant case, nor did the plaintiffs express any preference to the union as to the manner in which their grievance should be handled. Also in accordance with the policy of Local 312, the union did not have any formal session with the plaintiffs concerning their grievances, and no witnesses were called on plaintiffs' behalf at the hearings. The Union Business Agent testified that he might have departed from these policies if the plaintiffs had so requested. Notices were generally posted in the terminal as to the progress of

grievances, and the plaintiffs were not personally notified in advance of the actual hearing date of their grievances before the Joint Committee.

The union was well aware of the basis of the plaintiffs' claim of seniority and so presented it throughout the entire grievance procedure. All the issues raised by the plaintiffs in their original grievances were raised by Local 312's representatives in the grievance procedure and were considered by the Joint Committee.

The plaintiffs contend that Leaman and Local 312 conspired to deprive plaintiffs of their seniority rights by not informing the Joint Committee of the alleged promise and further claim that Local 312 breached its duty of fair representation by processing the grievances in a perfunctory manner. More specifically, plaintiffs claim that Local 312 breached its duty of fair representation in that it failed to conduct a full and proper investigation of the facts and failed to call witnesses in plaintiffs' behalf. Plaintiffs also allege that the union wrongfully failed to allow plaintiffs to appear and testify on their own behalf and allegedly failed to keep them fully advised of the course of the proceedings.

Plaintiffs rely on Local 13, International Longshoremen's and Warehousemen's Union v. Pacific Maritime Association, 441 F.2d 1061 (9th Cir. 1971), DeArroyo v. Sindicato De Trabajadores Packing, AFL–CIO, 425 F.2d 281 (1st Cir. 1970), Dewey v. Reynolds Metal Company, 291 F.Supp. 786 (W.D.Mich. 1968), and Thompson v. International Association of Machinists, 258 F.Supp. 235 (E.D.Va.1966). The defendants Local 312 and Leaman contend that the union performed its duties as a bargaining representative honestly, in good faith, and without hostile discrimination against the plaintiffs. They also deny any conspiracy to deprive the plaintiffs of their seniority and contend that the union was fully aware of all the facts underlying the grievances, and that the union presented these facts in the grievance procedure in accordance with its

duty to plaintiffs. Defendants also allege that the plaintiffs were advised of the progress of their grievances in the course of the proceeding, and claim that plaintiffs failed to request the union to allow plaintiffs to testify or call witnesses in their own behalf. The defendants also contend that the decision of the Joint Committee of November 21, 1972 is final and binding on all parties, and bars the present suit.

■ It is well settled that when labor and management agree upon an instrument for the final and binding settlement of disputes arising out of a collective bargaining agreement, the judiciary should decline to involve itself in the merits of a dispute settled in accordance with that instrument. General Drivers, Warehousemen & Helpers, Local Union 89 v. Riss & Co., 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963).

■ In considering the appropriateness of reviewing a joint committee's decision, the Sixth Circuit in Morris v. Werner Continental, 466 F.2d 1185 (1973) recently stated, at p. 1190:

When the parties agree to contracts . . . which [have] the explicit provision to the effect that questions of seniority shall be subject to grievance procedures, the courts will not only refrain from hearing appeals from the awards of such arbitration as may finally result in such grievance matters, but the courts will, by injunction, require the parties to proceed with the arbitration proceeding in the event either of them should decline to do so.

The United States Court of Appeals for the Third Circuit has narrowly construed the judiciary's power to review a joint committee's decision. Price v. Teamsters, 457 F.2d 605 (1972); Bieski v. Eastern Automobile Forwarding Company, 396 F.2d 32 (1968). See also Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3rd Cir. 1969). In *Bieski* the Court stated, 396 F.2d at p. 37:

the question of judicial review of a 'final' private decision should turn on the adequacy of that private decision

under the contract in terms of the controversy presented. If the court is convinced both that the contract procedure was intended to cover the dispute and, in addition, that the intended procedure was adequate to provide a fair and informed decision, then review of the merits of any decision should be limited to cases of fraud, deceit, or instances of unions in breach of their duty of fair representation.

It is therefore the law in this Circuit that where the contract procedure is intended to cover a dispute and the grievance procedure is adequate to provide a fair and informed decision, then the merits of such a final decision can be reviewed by a court only where fraud, deceit, or a breach of the duty of fair representation is established.

The instant seniority dispute was properly before the Joint Committee, and the plaintiffs do not contend otherwise. The Agreement itself provides in section 5.2:

Any controversy over the seniority standing of any employee on such [seniority] lists if raised within ten (10) days' period shall be submitted to the Grievance Procedure as established by this Agreement.

There is no question that the Joint Committee had the jurisdiction to hear and the authority to decide the matter. Furthermore, plaintiffs have not alleged that the procedure agreed to by the parties was inadequate to provide a fair and informed decision, and there is no evidence in this record which indicates that the procedure is not adequate. It appears from the record that the Joint Committee gave both the union and management a full and fair opportunity to present relevant evidence and argue their respective positions. The only issue, therefore, is whether the decision of the Joint Committee was tainted by fraud, deceit, or a breach by Local 312 of its duty to fairly represent the plaintiffs.

■ There is no credible evidence in this record which would lead the Court to conclude that Leaman and Local 312 perpetrated a fraud or deceived the Joint Committee. To the contrary, the entire record discloses that the Joint Committee was fully advised of the facts underlying the plaintiffs' grievances, including the alleged promise. The Joint Committee denied the plaintiffs' request for seniority rights after considering the plaintiffs' contention that a promise had been made to them that they would maintain their seniority as of the date of their original hire.

The union's duty of fair representation has its origins in the decisions of the United States Supreme Court in Steele v. Louisville & Nashville Railroad Company, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944) and Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944). In *Steele* and *Tunstall*, the Supreme Court held that the Railway Labor Act, 45 U.S.C. 151 et seq., imposes upon a statutorily recognized collective bargaining agent a duty to "represent non-union or minority union members . . . without hostile discrimination, fairly, impartially, and in good faith." *Steele*, supra, 323 U.S. at 204, 65 S.Ct. at 233. The Supreme Court held in these cases that this duty barred a union from entering into a collective bargaining agreement which discriminated against members of the collective bargaining unit on the basis of race.

■ The duty of fair representation was subsequently extended by the Supreme Court to unions certified as the collective bargaining representative under the terms of the National Labor Relations Act, 29 U.S.C. § 185 et seq., the status of Local 312 in this case. Ford Motor Co. v. Huffman, 345 U.S. 330 (1953). In Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) the United States Supreme Court again had an opportunity to apply the duty of fair representation, in connection with griev-

ance procedures and arbitration clauses and stated, 386 U.S. at p. 191, 87 S.Ct. at p. 917:

> Though we accept the proposition that a union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion, we do not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement . . .

It is, therefore, clear that a union may not ignore a meritorious grievance or process it in a perfunctory fashion.

■ In the instant case Local 312 accepted the grievances of plaintiffs for processing and acted as the plaintiffs' advocate in all three steps of the grievance procedure. The Union Business Agent who represented the plaintiffs before the Joint Committee contended that the plaintiffs were entitled to seniority benefits in accord with their initial date of employment, based upon the alleged promise to plaintiffs. This claim was rejected by the Joint Committee. Local 312 was well aware of the facts underlying the plaintiffs' claim. The plaintiffs never requested the union to depart from its standard policy in non-discharge cases of not permitting grievants to appear. Nor did the grievants ever express to the union any preference as to the manner in which the grievances should be processed, or request the union to call any witnesses to testify in their behalf. Furthermore, notices were generally posted in the place of employment advising all grievants of the progress of their cases. The record lacks sufficient credible evidence upon which this Court could base a finding that the union acted unfairly, partially and in bad faith or with hostile discrimination or that the union ignored a meritorious grievance or processed it in a perfunctory fashion. Furthermore, there is no credible evidence to establish that it breached its duty of fair representation by failing to call witnesses in plaintiffs'

behalf to establish the alleged promise or by failing to allow plaintiffs to appear in their own behalf. The alleged promises were made by Leaman and the predecessor union more than ten years prior to the filing of the grievances. The alleged breach of the alleged promises occurred in 1966, six years prior to the filing of the grievances. Furthermore, had such a promise been made by the predecessor union and by the defendant Leaman, it would present a question as to whether such a promise would enable the plaintiffs to displace fellow employees on a seniority list established pursuant to the collective bargaining agreement. It appears that the National Labor Relations Act bars members of a collective bargaining unit from making individual contracts which defeat or limit the terms of the collective bargaining agreement. Steele v. Louisville, *supra*, 323 U.S. at 200, 65 S.Ct. at 231; J. I. Case v. National Labor Relations Board, 321 U.S. 332, 337, 64 S.Ct. 576, 88 L.Ed. 762 (1944); Order of Railroad Telegraphers v. Railway Express Agency, Inc., 321 U.S. 342, 64 S.Ct. 582, 88 L.Ed. 788 (1944).

The Court finds that the cases relied on by the plaintiffs are distinguishable on the facts. In Local 13, International Longshoremen's and Warehousemen's Union v. Pacific Maritime Association, 441 F.2d 1061 (9th Cir. 1971), the Court held that summary judgment was inappropriate as there was evidence which would warrant a finding that the union, motivated by hostility to an individual, deliberately sacrificed his meritorious grievance in exchange for a favorable outcome on another grievance. In De Arroyo v. Sindicato De Trabajadores Packing, AFL–CIO, 425 F.2d 281 (1st Cir. 1970), the First Circuit held that a union which failed to investigate and process the apparently meritorious grievances of six discharged employees violated the union's duty of fair representation. The Court in Dewey v. Reynolds Metal Company, 291 F.Supp. 786 (W.D. Mich.1968) held that an employee dis-

charged because of religious scruples against Sunday work was not barred from bringing suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. by a "final" adverse grievance determination. The Court held that an adverse grievance determination cannot be final and binding where underlying constitutional rights are involved. Finally, in Thompson v. International Association of Machinists, 258 F.Supp. 235 (E.D.Va.1966), the Court held that the union's failure to provide a discharged employee with notice of the arbitration hearing, coupled with the failure of the union to adequately prepare for the hearing, and the inadequate presentation of the grievance was unfair representation. In *Thompson*, the grievance was based upon the employee's claim that he was fired for complaining about racial discrimination. In the instant case, there is no credible evidence that Local 312 acted in any manner inconsistent with the interests of the grievants. The union processed the grievances through three steps in the grievance procedure and was fully aware of the facts upon which the grievances were based and adequately presented those facts. The grievants have not asserted a violation of an underlying constitutional right.

The Court concludes that the credible evidence presented in this case has not been sufficient to establish that Local 312 breached its duty of fair representation. The decision of the Joint Committee is therefore final and binding.

This Memorandum and Order shall constitute the Court's findings of fact and conclusions of law, pursuant to Rule 52(a), Federal Rules of Civil Procedure.

Accordingly, the following Final Judgment is entered:

### FINAL JUDGMENT

And now, this 13th day of December 1973, it is ordered that judgment be and the same hereby is entered in favor of the defendants, Chemical Leaman Tank Lines, Inc. and Local Union 312, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and against the plaintiffs, John H. DeBelsey, Sr. and Harry Broomall, together with costs.