**AMERICAN POSTAL WORKERS UNION, AFL–CIO, Tyler, Texas, Local Union**

v.

**UNITED STATES POSTAL SERVICE.**

**Civ. A. No. 5578.**

United States District Court,
E. D. Texas,
Tyler Division.

Sept. 28, 1972.

---

Ken T. Miller, Tyler, Tex., for plaintiff.

Roby Hadden, U. S. Atty., Tyler, Tex., for defendant.

## ORDER

JUSTICE, District Judge.

This civil action concerns a dispute over coffee breaks between the American Postal Workers Union, AFL-CIO, Tyler, Texas, Local Union (hereinafter local union) and the United States Postal Service (hereinafter postal service). The local union is the collective bargaining unit representing the employees of the postal service. The postal service is a governmental corporation established as an independent unit of the executive branch of the United States. 1970 Postal Reorganization Act, 39 U.S.C.A. §§ 101, 201. The local union seeks to enjoin the postal service from violating Article V, Article XXX, and other unspecified articles of the National Collective Bargaining Agreement (effective July 20, 1971), and certain "past practices." A hearing on the motion for a preliminary injunction was held on September 21–22, 1972.

The immediate problem is one of jurisdiction. Plaintiffs rely on Section 1208(b) of the 1970 Postal Reorganization Act, 39 U.S.C.A. § 1208(b):

> Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy.

The first potential obstacle, the anti-injunction provisions in the Norris-La-Guardia Act, 29 U.S.C.A. §§ 101–115, is easily overcome. The Supreme Court has held that these anti-injunction provisions do not apply to the United States in its relations with its employees. United States v. United Mine Workers, 330 U.S. 258, 269–280, 67 S.Ct. 677, 91 L.Ed. 884 (1947). The second problem is whether this particular dispute over the number and length of coffee breaks constitutes a "violation of contract[s]" cognizable under 39 U.S.C.A. § 1208(b). The court holds that it does not.

Since Section 1208(b) of the 1970 Postal Reorganization Act, relied upon by plaintiffs, tracks the language of Section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), the court is aided in its interpretation by cases decided under the Labor Management Relations Act. *See* National Association of Letter Carriers v. Sombrotto, 449 F.2d 915, 918–919 (2d Cir. 1971). Clearly the term "contracts" includes more than the collective bargaining agreement. In deciding that a strike settlement agreement was a contract cognizable under Section 1208(b), the Supreme Court announced that the federal forum "was provided for actions on *other labor contracts* besides collective bargaining contracts." Retail Clerks v. Lion Dry Goods, 369 U.S. 17, 25–28, 82

S.Ct. 541, 547, 7 L.Ed.2d 503 (1962). (Emphasis added.)

Nevertheless, the Supreme Court was careful to emphasize that the decision on whether a particular document or combination of circumstances constituted an agreement between the parties must be approached under traditional contract analysis: "Contract in labor law is a term the implications of which must be determined from the connection in which it appears." Retail Clerks v. Lion Dry Goods, *supra,* quoting J. I. Case Co. v. Labor Board, 321 U.S. 332, 334, 64 S.Ct. 576, 88 L.Ed. 762 (1944). The Court in *Lion Dry Goods* noted several factors that were significant in its conclusion that a strike settlement agreement constituted a contract cognizable under Section 301(a):

> It is enough that this is *clearly an agreement* between employers and labor organizations significant to the maintenance of labor peace between them. It came into being as a means satisfactory to both sides for terminating a protracted strike and labor dispute. Its terms affect the working conditions of the employees of both respondents. It effected the end of picketing and resort by the labor organizations to other economic weapons, and restored strikers to their jobs. It resolved a controversy arising out of, and importantly and directly affecting, the employment relationship.

369 U.S. at 28, 82 S.Ct. at 548. (Emphasis added.)

In the instant case, the National Collective Bargaining Agreement is silent on the subject of coffee breaks. Article XXX of the Agreement, entitled Local Implementation, was relied upon by plaintiffs initially, but they subsequently admitted that the article was still under negotiation. Moreover, plaintiff's reliance on Article V of the Agreement and Section 1203(b) of the 1970 Postal Reorganization Act is of little help. Article V provides that

> The Employer will not take any actions affecting wages, hours and other terms

and conditions of employment as defined in Section 8(d) of the National Labor Relations Act which violate the terms of this Agreement or are otherwise inconsistent with its obligations under law.

Section 1203(b) of the 1970 Postal Reorganization Act declares that

> Agreements and supplements in effect on the date of enactment of this section covering employees in the former Post Office Department shall continue to be recognized by the Postal Service until altered or amended pursuant to law.

Characterization of "contracts" as "agreements and supplements" or "terms of this Agreement" or "obligations under law" only restates the problem. The issue remains whether the alleged departure from prior coffee break schedules constitutes the violation of a contract.

Plaintiffs argue that a contract between the local union and the postal service arises from the past practices of the postal service regarding coffee breaks. Witnesses for the local union testified that prior to November 4, 1969, they were permitted two coffee breaks not to exceed fifteen minutes each for any eight-hour tour of duty; that after November 4, 1969, they were permitted two coffee breaks not to exceed ten minutes each; and that currently they were allowed one coffee break not to exceed ten minutes. A witness for the postal service testified that the number of coffee breaks for each tour of duty varied during the years preceding November 4, 1969, and that the current Local Policy on Refreshment Breaks was issued pursuant to the discretion of the Postmaster. That Policy provides in part that

> Each unit supervisor is responsible for the day to day administration and control of refreshment breaks in his unit. Breaks should not be and must not be looked on as an automatic non-work period at a given time. Breaks can be authorized by the unit supervisor when service needs will not suffer.

Breaks will be limited to no more than 10 minutes time away from the individual work stations. This is considered a reasonable time allowance since swing rooms are readily accessible to carriers on the streets. Breaks should not be taken just before ending a duty period. A maximum of 2 breaks is allowed during an 8 hour work day. Normally, a break should not be taken by an employee when the period of duty is 2 or 3 hours for the scheduled work day.

Clearly the past practices alleged by plaintiffs in this case are too vague and indefinite to constitute a contract within the contemplation of Section 1208(b). The coffee break pattern prior to November 4, 1969, was disputed by witnesses for labor and management; the practices after that date—in effect at the time the collective bargaining agreement became effective—were summarized in the Local Policy statement providing only that employees are entitled to a maximum of two breaks per eight hour tour of duty but providing *no minimum*; and the witnesses for labor and management agreed that the unit supervisors exercised some discretion under the Local Policy to regulate the number and length of breaks not inconsistent with the Local Policy.

This result is supported by a decision from the Second Circuit in Local 33, International Hod Carriers v. Mason Tenders, 291 F.2d 496 (2d Cir. 1961), decided under Section 301(a) of Labor Management Relations Act. In *Mason Tenders*, one local union brought suit against another based on an alleged "agreement, custom and practice" concerning the work assignment or allocation of work by Mason Tenders in building construction. Although the Court split on procedural alternatives—Judge Medina choosing to grant summary judgment for the defendants and Judge Friendly arguing for dismissal for lack of federal jurisdiction—the court was unanimous in deciding that the alleged custom or practice did not constitute a contract within the meaning of Section 301(a) of the Labor Management Relations Act.

*Mason Tenders* concerned an intra-union dispute rather than one between a local union and the local branch of the postal service; but the relevant legislative history, discussed by Judge Friendly in his concurring opinion, makes it evident that the policy favoring negotiations and arbitration through nonjudicial procedures applies to the case under consideration. *See* Local 33, International Hod Carriers v. Mason Tenders, *supra* at 505–507.

> The clause in § 301(a) with which we are here concerned must be construed in the light of the purpose underlying the entire section, namely, to provide a remedy by suit in the Federal courts in cases where, because of the difficulty in suing labor organizations, other remedies were considered inadequate. . . . [That purpose would not] include a case such as this where the claimed right is founded on an alleged custom which, even as alleged, is uncertain both in tenor and in term.

*Id.* at 507 (concurring opinion).

Plaintiffs in the instant case are not without a remedy. Conclusion of negotiations on Article XXX of the National Collective Bargaining Agreement, entitled Local Implementation, should prompt agreement on a "memorandum of understanding" concerning "detailed matters relating to local conditions of employment" such as coffee breaks.* Al-

---

* The parties recognize that it is impractical to set forth in this Agreement all detailed matters relating to local conditions of employment and further negotiations regarding local conditions will be required with respect to local installations, post offices, and facilities. Accordingly, designated agents of the Unions signatory to this Agreement and the representatives of the Employer shall negotiate such matters on a local level, and any agreement reached shall be incorporated in memoranda of understanding. No such negotiations of memoranda of understanding shall be inconsistent or in conflict with this

ternatively, plaintiffs may provide for the matter of coffee breaks pursuant to the procedure outlined in Section 1207 of the 1970 Postal Reorganization Act, 39 U.S.C. § 1207. Finally, future developments may of course require that the plaintiffs invoke the grievance procedures under Article XV of the Agreement or file a charge of an unfair labor practice with the National Labor Relations Board, *see* National Labor Relations Act, 29 U.S.C. § 151 et seq. Accordingly, it is

Ordered that the above-entitled and numbered civil action be, and it is hereby, dismissed.

Agreement, nor deprive any employee of any rights or benefits provided for under this Agreement.

Local negotiations shall commence on February 1, 1972. If agreement is not reached at the local level within 30 days, the issues remaining in dispute shall be referred for impasse resolution to the regional level.

Impasses at the regional level which are not resolved by May 1, 1972, shall be referred for settlement to the national level. Unresolved impasses at the national level may thereafter be submitted to arbitration at the national level at the option of a Union or Unions signatory hereto or the Employer if agreement has not been reached by June 15, 1972.

For the purposes of providing such arbitration, the following procedure shall be followed: The Unions and the Employer shall each name one arbitrator. The two arbitrators thus selected shall seek to agree upon a third neutral arbitrator. In the event they fail to do so within 5 days, the neutral arbitrator shall be appointed by the American Arbitration Association. The cost of the neutral shall be shared equally by the Unions and the Employer.
Article XXX of the National Collective Bargaining Agreement.