590 F.2d 733
 100 L.R.R.M. (BNA) 2390, 85 Lab.Cas. P 11,082
 Steven F. ETHIER, Appellant-Plaintiff,
v.
UNITED STATES POSTAL SERVICE, M. A. Wright, R. E. Holding,
Benjamin F. Bailar, William F. Bolger, Charles H. Codding,
William A. Irvine, Crocker Nevin, Hayes Robertson, James V.
P. Conway, James C. Gildea, James R. Braughton, Clarence B.
Gels, John C. Schufman, Eugene C. Wald, Joseph Augustine,
Rochelle Eastman, William Maurer, Harry R. Link, D.
Erickson, A. De Marco, Richard Holst, Charles Jones, J. E.
McCall, John H. Lloyd, George Moudry, George F. Mead,
National Association of Letter Carriers, AFL-CIO, Branch 28,
National Association of Letter Carriers, AFL-CIO,
Appellees-Defendants.
 No. 78-1197.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Jan. 4, 1979.
Decided Jan. 11, 1979.
 
 James F. McGovern and Michael L. James, McGovern & Paquin, Minneapolis, Minn., filed brief for appellant-plaintiff.
 Stuart J. Blenner, Asst. Regional Labor Counsel, Law Dept., Office of Labor Law, U. S. Postal Service, Chicago, Ill., Andrew W. Danielson, U. S. Atty., and Mel I. Dickstein, Asst. U. S. Atty., Minneapolis, Minn., filed brief for appellee U. S. Postal Service.
 Ronald L. Rollins, Krause, Rollins, Piper, Oman & Alvey, Minneapolis, Minn., and James R. Barnett, Associate Gen. Counsel, Nat. Assn. of Letter Carriers, AFL-CIO, Washington, D. C., filed brief for Unions.
 Before HEANEY, STEPHENSON and HENLEY, Circuit Judges.
 HEANEY, Circuit Judge.
 
 
 1
 Steven F. Ethier was employed by the United States Postal Service (USPS) as a letter carrier. He was a member of the National Association of Letter Carriers, AFL-CIO (NALC), and Branch 28 of that Association. He served from January, 1974, to January, 1975, as a steward of the Branch. The National Association is signatory to a collective bargaining agreement with the USPS.
 
 
 2
 On March 13, 1975, Ethier was served with a Notice of Proposed Removal letter advising him that he would be discharged no earlier than thirty days from the date he received the notice. The letter advised him that he had a right to protest the proposed action by filing a grievance pursuant to the provisions of Article XV, section 2 of the 1973 National Agreement. That section provides as follows:
 
 
 3
 SECTION 2. Procedure.
 
 
 4
 Step 1: The employee must discuss a grievance with his immediate supervisor within fourteen (14) days of when the employee or Union has learned or may reasonably have been expected to have learned of its cause. The employee may be accompanied by his steward or a union representative, if he so desires. * * * The Union shall be entitled to appeal an adverse decision to Step Two of the grievance procedure within ten (10) days after receipt of the Employer's decision. Such appeal shall be in writing to the head of the installation or his designee.
 
 
 5
 The Union may also initiate a grievance at Step One in accordance with the above.
 
 
 6
 (Step 4:) The failure of the aggrieved party or his representative to present the grievance within the prescribed time limits of the steps of this procedure including arbitration, shall be considered as a waiver of the grievance.
 
 
 7
 It is agreed that in the event of a dispute between the Union and the Employer as to the interpretation of this Agreement, such dispute may be initiated as a grievance at the National level without going through the preceding steps.
 
 
 8
 On March 17, 1975, Ethier called the Union steward who had succeeded him and told him of the proposed discharge. He asked the steward to assist him in filing and processing a grievance contesting the proposed discharge. In the two week period following the call the steward, who was new to the job, investigated the matter and discussed it with USPS representatives on seven occasions. Ethier was present at some of those meetings. The steward stated in an affidavit that he believed that the discussions satisfied the Step 1 requirements of the Agreement.
 
 
 9
 On April 1, 1975, the steward filed a written grievance concerning the discharge with the USPS. He stated in an affidavit that he believed that if a written notice was necessary the notice was timely because it was filed within fourteen days of the date that the Union had been notified of the proposed discharge.
 
 
 10
 On April 15, 1975, the Postmaster wrote Ethier and advised him that the reasons given in the Notice of Charges were fully supported by the evidence and warranted his dismissal from the Service. He also advised Ethier of his right to appeal to the Civil Service Commission. Ethier, however, elected to have the matter submitted to arbitration and the Union processed the grievance to arbitration. In that proceeding the arbitrator held:
 
 
 11
 (The) (g)rievance is dismissed as nonarbitral. No Step 1 discussion between grievant and his immediate supervisor was held within 14 days after the occurrence giving use to the grievance and thus no arbitral jurisdiction exists.
 
 He stated that:
 
 12
 The Union contends that this grievance was initiated by the Union and that no confrontation between the grievant and his immediate supervisor is required.
 
 
 13
 The grievant here had been a Union steward and clearly must have known of the contractual requirements as to timeliness.
 
 
 14
 In the case of the 1973 National Agreement the parties have specifically provided that "The Union may also initiate a grievance at Step 1 in accordance with the above."
 
 
 15
 Clearly, the 1973 National Agreement extended the time for Step 1 and also provided for the Union to file a grievance but if the Union filed it, it had to do so in accordance with "the above" which, inter alia, provides that the employee must discuss a grievance with his immediate supervisor within 14 days of the occurrence of the grievance.
 
 
 16
 In this case grievant had until March 31, 1975, in which to initiate a discussion. None was held. The Union's discussion on April 4, 1975, was not with the immediate supervisor and grievant was not present. (Emphasis deleted.)
 
 
 17
 On October 11, 1977, Ethier filed a pro se complaint in the District Court alleging Inter alia that the NALC breached its duty of fair representation in perfunctorily processing his grievance.[1] On February 9, 1978, the District Court granted the NALC's Motion for Summary Judgment and USPS's Motion to Dismiss. Ethier appeals.
 
 
 18
 The Supreme Court in Vaca v. Sipes, 386 U.S. 171, 177, 87 S.Ct. 903, 909-910, 17 L.Ed.2d 842 (1967) defined the duty of fair representation as follows:
 
 
 19
 (A) Union (has) a statutory duty fairly to represent all * * * employees, both in its collective bargaining * * * and in its enforcement of the resulting collective bargaining agreement. * * * Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct.
 
 
 20
 At a subsequent point in the opinion the Court defined arbitrary conduct to include handling of a grievance in a perfunctory manner. Id. at 191, 87 S.Ct. 903. See also Republic Steel Corp. v. Maddox, 379 U.S. 650, 652-653, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).
 
 
 21
 Ethier's complaint alleges that the NALC's conduct was "so perfunctory that it was arbitrary, discriminatory, or in bad faith." The significant paragraphs of the complaint read as follows:
 
 
 22
 55. James Hiller undertook to file a grievance in the plaintiff's behalf and was relied upon by the plaintiff to file a timely grievance. Mr. Hiller failed to file a timely grievance pursuant to the Agreement between the United States Postal Service and the National Association of Letter Carriers, AFL-CIO, et al., Article XIV, (sic) section 2 which provides that a grievance must be filed within 14 days of when the employee or the union has learned of its cause.
 
 
 23
 56. The conduct of James Hiller as an agent of the National Association of Letter Carriers, AFL-CIO, Branch 28, and the National Association of Letter Carriers, AFL-CIO, was so perfunctory that it was arbitrary, discriminatory, or in bad faith, and constitutes a breach of a duty of fair representation to the plaintiff within the meaning of the Agreement between the United States Postal Service and the National Association of Letter Carriers, AFL-CIO, et al., Article I section 1A.
 
 
 24
 Ethier's affidavit states in pertinent part that:
 
 
 25
 5. On March 17, 1975, the plaintiff notified James Hiller, a union steward, of his proposed removal, and Mr. Hiller undertook to file a timely grievance on behalf of the plaintiff. In a later discussion of the plaintiff's grievance, the plaintiff suggested to Mr. Hiller that he file the plaintiff's grievance at Step 1 in writing within fourteen days. Mr. Hiller told the plaintiff that he did not intend to file the grievance in writing because he was not required to file the grievance in writing. The plaintiff told Mr. Hiller that the plaintiff had had success with his practice of serving postal managers with written memoranda of the basis of grievances he had processed in the past.
 
 
 26
 6. On November 12, 1975, the plaintiff was present at an arbitration hearing concerning the plaintiff's grievance when the United States Postal Service asserted that James Hiller had not filed a grievance at Step 1 within fourteen days. The United States Postal Service introduced a grievance form filed by Mr. Hiller on April 1, 1975, the fifteenth day after he knew about the plaintiff's grievance. Mr. Hiller testified at the hearing that he had discussed the grievance several times during the fourteen days following March 17, 1975, and had fulfilled the requirements of the grievance-arbitration procedure. Eugene C. Wald, manager of Elway Station, and Joseph Augustine, the carrier foreman at Elway Station, testified that they did not remember that any Step 1 discussion of the plaintiff's had been held. In spite of Mr. Hiller's uncorroborated testimony, Arbitrator James J. Willingham dismissed the plaintiff's grievance as non-arbitrable.
 
 
 27
 The allegations of the complaint and statements in the affidavit do not support an inference that the Union handled the grievance in a perfunctory manner.[2] At best the allegations support an inference that the Union steward erred in construing the time limits set forth in Article XV, section 2 of the Agreement an error which was understandable in the light of the specific language of the Agreement. Moreover, USPS management officials met with the Union steward on seven occasions in the period before the time limits expired and never told him that an initial meeting must be held with Ethier's immediate supervisor. The fact that the arbitrator ultimately held against Ethier on the issues of contract interpretation and waiver does not give rise to an inference of bad faith as perfunctory handling by the steward.
 
 
 28
 If Ethier's point of view were adopted, Unions would be subject to claims of unfair representation whenever a grievance was ultimately found not to have been timely filed. We cannot believe that the Supreme Court intended to give the word "perfunctory" the meaning suggested by Ethier. The word is defined in "Webster's New World Dictionary," as "without concern or solicitude; indifferent." Certainly this record does not support an inference that the Union steward here was unconcerned, unsolicitous, or indifferent. To the contrary, he pursued the grievance with vigor and erred only in failing to anticipate how the Agreement would ultimately be construed by an arbitrator. We cannot impose liability for such failure. See Coe v. United Rubber, Cork, Linoleum & Plastic, 571 F.2d 1349 (5th Cir. 1978); Minnis v. Intern. U., United Auto., Aerospace, Etc., 531 F.2d 850 (8th Cir. 1975); Griffin v. International U., United Automobile, A. & A. I. W., 469 F.2d 181 (4th Cir. 1972).
 
 
 29
 Ethier cites Ruzicka v. General Motors Corporation, 523 F.2d 306 (6th Cir. 1975), and DeArroyo v. Sindicato De Trabajadores Packing, AFL-CIO, 425 F.2d 281 (1st Cir.), Cert. denied, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970), in support of his position. To the extent that they do, we decline to follow them. We note for the purpose of this opinion that in each case the Court found that the Union's conduct was inexplicable and here the reasons for the Union steward's actions are clearly set forth.[3]
 
 
 30
 The judgment of the District Court is affirmed.
 
 
 
 [1]
 Ethier had filed two earlier pro se complaints containing essentially the same allegation. Both complaints were dismissed without prejudice
 
 
 [2]
 Ethier alleges in his brief on appeal that the Union made no effort at the arbitration hearing to present any evidence to support its position that the grievance had been properly filed, other than the uncorroborated opinion testimony of the steward. He implies that there existed, and the Union could have offered, additional evidence as to the intent of the USPS and the NALC in originally negotiating the language of the applicable provision of the Agreement. We find the contention without merit
 
 
 [3]
 In earlier cases presented to this Court, Mavis v. Brotherhood of Ry., Airline & S. S. Clerks, 585 F.2d 926 (8th Cir. 1978); Florey v. Air Line Pilots Ass'n, Intern., 575 F.2d 673 (8th Cir. 1978); and Augspurger v. Brotherhood of Locomotive Engineers, 510 F.2d 853 (8th Cir. 1975), we held that improper Union motivation is the crux of the fair representation doctrine and is an essential element in all fair representation cases. We indicate here only that in an appropriate case, improper motivation may not be required where perfunctory conduct is alleged and proved