**George A. TALLEY, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE and National Rural Letter Carriers' Association, Defendants.**

No. Civ. 4–81–190.

United States District Court,
D. Minnesota.

Nov. 5, 1981.

Michael W. McNabb, Burnsville, Minn., for plaintiff.

James Rosenbaum, U.S. Atty. by Deborah S. Kleinman, Asst. U.S. Atty., Minneapolis, Minn., and Stephen D. Gordon, St. Paul, Minn., William B. Peer, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

MILES W. LORD, Chief Judge.

Plaintiff, a United States postal carrier, on April 8, 1981, brought this suit under 39 U.S.C. § 1208(b) against defendant United States Postal Service (Postal Service) alleging a breach of a collective bargaining agreement. In addition, plaintiff sued defendant National Rural Letter Carriers' Association (Union) pursuant to 28 U.S.C. § 1339 claiming a breach of a duty of fair representation. On July 23, 1981, the United States Postal Service moved this Court to dismiss the above-styled action pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). The Union, on August 6, 1981, moved for a summary judgment under Fed.R.Civ.P. 56.

### I. FACTS

This suit concerns a dispute between two postal employees over a rural carrier position at the Rosemount, Minnesota, Post Office. The pertinent uncontradicted facts are as follows: In April 1979, a vacancy occurred on the rural route in the Rosemount office. At the time plaintiff was employed by defendant Postal Service as a letter carrier on a city route in Rosemount. During this period, one John Morrison was employed as a rural letter carrier in Eagan, Minnesota. Morrison had been rural letter carrier in Rosemount before he was reassigned to Eagan.

The collective bargaining agreement in effect at the time between defendants United States Postal Service and National

Rural Letter Carriers' Association provided that a reassigned rural carrier could exercise "retreat" rights when a vacancy occurred in his original office. The agreement required the reassigned rural carrier to file a request for retreat rights at the time of his reassignment. Morrison, however, filed no such request. Nevertheless, the Postal Service permitted Morrison to exercise retreat rights by filing a letter of intent at the time the vacancy in Rosemount came into being and the position was then awarded to him. Plaintiff then brought a labor grievance complaining that Morrison had not properly exercised his retreat rights. Plaintiff ultimately prevailed in his grievance and was awarded the Rosemount position. He then became a member of defendant National Rural Letter Carriers' Association.

As is often the case in labor disputes, the matter did not come to rest after one grievance proceeding and when Morrison initiated a grievance, the National Rural Letter Carriers' Association, representing Morrison, took the grievance to arbitration. An arbitration hearing was held in the Post Office in St. Paul, Minnesota, on July 25, 1980. The arbitrator issued his opinion and award in favor of Morrison on August 10, 1980. Eight months later, on April 8, 1981, plaintiff brought this suit to reinstate him as a rural route carrier in Rosemount.

Plaintiff asks this Court to find the arbitration hearing to be violative of due process. He bases his argument upon the failure of the Postal Service to notify him of the arbitration hearing and not allowing him the opportunity to be heard. He also alleges that the Postal Service did not adequately prepare or present its case before the arbitrator. Thus, plaintiff argues, did the Postal Service breach its collective bargaining agreement with him. Plaintiff charges the National Rural Letter Carriers' Association with breaching its duty of fair representation by undertaking the representation of Morrison without an analysis of which of its members had superior rights to the Rosemount position.

## II. CONCLUSIONS OF LAW

### A. The United States Postal Service's Motion to Dismiss.

■ The Postal Service advances two arguments in favor of its motion to dismiss. First, it claims this Court has no jurisdiction since plaintiff failed to comply with the American Arbitration Act (AAA), 9 U.S.C. § 12. This section requires that service of any complaint to vacate, modify or correct an arbitral decision be made within three months after entry of the decision. Second, the Postal Service argues that any contention claiming a breach of the collective bargaining agreement must be made the subject of a contract grievance by the plaintiff. Because plaintiff did not initiate a grievance proceeding, he has failed to exhaust his contract remedies and thereby fails to state a claim upon which relief can be granted.

Because plaintiff brings this action pursuant to 39 U.S.C. § 1208(b) of the Postal Reorganization Act, it is appropriate to consider whether that Act is the proper barometer for determining whether plaintiff's action is time-barred. Section 409(b) of the Postal Reorganization Act adopts the statute of limitations governing Title 28 of the United States Code. Title 28 contains a six-year statute of limitations. 28 U.S.C. § 2401(a). This reasoning has a certain amount of straightforward charm and, not surprisingly, the plaintiff finds its appeal irresistible.

The Postal Service's argument for the application of the AAA's statute of limitations is somewhat more involved. It begins by noting that the United States Postal Service is "an independent establishment of the executive branch of the Government of the United States," 39 U.S.C. § 201, whose labor relations is patterned after the private sector and to which the National Labor Relations Act applies. 39 U.S.C. § 1209(a). Therefore, the Postal Service argues, it is appropriate to characterize 39 U.S.C. § 1208(b) as the analog of § 301(a) of the Labor-Management Relations Act (LMRA) of 1947, 29 U.S.C. § 185(a). At least one Court of Appeals has so held. *See National*

*Association of Letter Carriers, AFL–CIO v. United States Postal Service*, 590 F.2d 1171, 1174 (D.C.Cir.1978). As the Postal Service correctly points out, the federal courts have often applied private sector § 301 law in order to resolve suits brought against the Postal Service under § 1208(b). *See Columbia Local, American Postal Workers Union, AFL–CIO v. Bolger*, 621 F.2d 615 (4th Cir. 1980); *National Association of Letter Carriers, AFL–CIO v. Sombrotto*, 449 F.2d 915 (2nd Cir. 1971); *American Postal Workers Union, AFL–CIO v. United States Postal Service*, 356 F.Supp. 335 (E.D.Tex.1972). The immediate problem one encounters when seeking to resolve this question by way of § 301 of the LMRA is the fact that Congress chose not to enact a statute of limitations governing actions brought pursuant to the section.

The Supreme Court, fortunately, has provided some guidance in this matter by directing the courts to focus their attention on the exact nature of the federal claim and the federal policies involved. *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 706–07, 86 S.Ct. 1107, 1113–1114, 16 L.Ed.2d 192 (1966). The suggested analysis in *Hoosier Cardinal* yields four possible alternatives: (1) The claim is, as plaintiff suggests, a breach of a contractual obligation for which the Postal Reorganization Act supplies the appropriate statute of limitations. This characterization yields a six-year statute of limitations. 39 U.S.C. § 409(b) and 28 U.S.C. § 2401(a). (2) The claim is a breach of contract and state law supplies the appropriate statute of limitations. This possibility also yields a six-year time limitation. Minn.Stat. § 541.05. (3) The claim is, as defendant Postal Service argues, an action to vacate an arbitration award and § 12 of the AAA is the correct statute of limitations. This description entails a ninety-day statute of limitations. (4) The claim is an action to vacate an arbitration award and state law determines the timeliness of the action. Again this would result in a ninety-day statute of limitations. Minn.Stat. § 572.19 (Subd. 2).

The Court finds that alternative number four best expresses the true nature of the federal claim and is most consistent with the policies underlying federal labor law.

Plaintiff attempts to characterize his suit against the Postal Service as a "breach of a contractual obligation to present all relevant facts in a labor dispute." Nevertheless, the Supreme Court has noted under similar circumstances that the fact that an employee's underlying claim against his employer is based on a collective bargaining agreement, i. e., a contract, does not automatically indicate the nature of the federal claim. *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981).

*Mitchell* concerned an employee who worked as a car washer in Staten Island, New York. His employer discharged him for falsifying his time cards. The employee requested his Union to file a grievance on his behalf contesting the discharge. The grievance proceeded along the course established for such disputes by the Union's and Company's collective bargaining agreement until ultimately the discharge was upheld in arbitration. Seventeen months after the arbitration decision, the employee filed a complaint in federal court against the Union and the Company under § 301(a) of the LMRA. He alleged that the Union had breached its duty of fair representation and that the Company discharged him not for the stated reasons but rather to achieve cost savings by replacing full-time employees with part-time employees. Both the Union and the Company moved for summary judgment on the ground the action was barred by New York's ninety-day statute of limitations for actions to vacate arbitration awards. Justice Rehnquist, writing for the Court, held that New York's ninety-day statute of limitations for actions to vacate an arbitration award governed the action and the state's six-year statute of limitations for actions alleging breach of contract was inapplicable. *Id.* at 64, 101 S.Ct. at 1564. The Court reasoned that while the employee did not style his suit as one to vacate an arbitration award, if he had succeeded in his suit, it would have had that direct effect. *Id.* at 61, 101 S.Ct. at 1563.

Indeed, the employee requested reinstatement with full back pay—the same relief he sought in arbitration. The Court went on to state:

It is true that respondent's underlying claim against his employer is based on the collective-bargaining agreement, a contract. It is not enough, however, for an employee such as respondent to prove that he was discharged in violation of the collective-bargaining agreement. "To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the Union. . . . The grievance processes cannot be expected to be error-free." *Hines*, [*v. Anchor Motor Freight, Inc.,*] 424 U.S. [554], at 570–571 [96 S.Ct. 1048, at 1059–60, 47 L.Ed.2d 231]. Thus respondent's characterization of his action against the employer as one for "breach of contract" ignores the significance of the fact that it was brought in the District Court pursuant to § 301(a) of the LMRA and that the indispensable predicate for such an action is not a showing under traditional contract law that the discharge was a breach of the collective-bargaining agreement, but instead a demonstration that the union breached its duty of fair representation. Since the conclusion of the Joint Panel was, under the collective-bargaining agreement, "binding on all parties," respondent was required in some way to show that the Union's duty to represent him fairly at the arbitration had been breached before he was entitled to reach the merits of his contract claim. This, in our view, makes the suit more analogous to an action to vacate an arbitration award than to a straight contract action. *Id.* at 62, 101 S.Ct. at 1563.

In the present action plaintiff's complaint seeks to have this Court rule the arbitrator's award void and reinstate him to the rural route in Rosemount. In subsequent communications, plaintiff has attempted to minimize the effect of his complaint by emphasizing the contractual nature of his dispute and stressing the Court's authority to award other remedies than those sought in the complaint. Nevertheless, the fairest interpretation of plaintiff's action is one to vacate an arbitration award. This is particularly so because, as in *Mitchell*, plaintiff has coupled his contract claim with an unfair representation claim; thus, "even though his employer may ultimately be called upon to respond in damages for it if he is successful, [the suit] is more a creature of 'labor law' as it has developed since the enactment of § 301 than it is of general contract law." *Mitchell, supra* at ——, 101 S.Ct. at 1564. This is equally the case where, as here, an employee sues pursuant to 39 U.S.C. § 1208(b), the Postal Reorganization Act, rather than 29 U.S.C. § 185, § 301 of the Labor-Management Relations Act. The mere fact that one is an employee of the Postal Service, an agency of the United States government, in no way changes the nature of the suit. A suit brought pursuant to § 1208(b), which incorporates an unfair representation claim is still "more a creature of 'labor law' than general contract law." The Postal Service's labor relations have been patterned after private sector labor law. 39 U.S.C. § 1209(a). The Postal Service correctly notes that 39 U.S.C. § 1208(b) is the analog of § 301(a) of the LMRA.[1] *National Associ-*

---

1. Section 1208(b) of the Postal Reorganization Act of 1970, 39 U.S.C. § 1208(b), provides as follows:

Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy.

Section 301(a) of the Labor-Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185(a), provides as follows:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy

*ation of Letter Carriers v. United States Postal Service*, 590 F.2d 1171, 1174 (D.C.Cir. 1978). The Court, therefore, is led to the conclusion that the true nature of plaintiff's claim is one to vacate an arbitration award. This is particularly so when, due to the limited number of rural route positions, plaintiff's reinstatement would entail the removal of Mr. Morrison from the job. In other words, if plaintiff succeeds in his suit, it will have the direct effect of vacating the arbitrator's decision.

Having identified the nature of the federal claim, the Court is confronted with the question of which statute of limitations to apply. Choosing among statutes of limitations often involves identifying the federal policy at issue and determining which time limitations best effectuates that policy. *Butler v. Local Union 823, International Brotherhood of Teamsters*, 514 F.2d 442, 446 (8th Cir. 1975); *Charney v. Thomas*, 372 F.2d 97, 100 (6th Cir. 1967). At the most general level, labor law has evolved as an instrument designed to provide employees with an opportunity "to secure individual redress for damaging failure of the employer to abide by the 'collective bargaining' contract." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 571, 96 S.Ct. 1048, 1060, 47 L.Ed.2d 231 (1976). Such a policy generally cuts in favor of relatively lengthy limitation periods. When, however, a labor dispute has proceeded through arbitration and the subsequent federal claim seeks to upset the arbitral award, a more specific federal policy comes into play. In this context, the courts must consider the federal policy of according finality to arbitration awards and the federal goal of "relatively rapid disposition of labor disputes." *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 707, 86 S.Ct. 1107, 1114, 16 L.Ed.2d 192 (1966). As noted above, both Minnesota's and the AAA's statute of limitations for actions vacating arbitration awards are ninety days.

The Postal Service has argued for the application of the AAA principally on the ground that, because the Postal Service is a federal employer operating throughout the country through a national rural carrier agreement, there is a special need for uniformity of time limitations. The Court finds this a curious argument insofar as much of the Postal Service's position relies upon collapsing the differences between public and private labor law.

■ Moreover, the Supreme Court has noted that while a uniform limitations provision appears desirable in these situations, it is not a justification for the courts to supply one where the legislature has not done so. *Hoosier Cardinal, supra* at 702–03, 86 S.Ct. at 1111. Rather, the timeliness of a § 301 (and analogously a § 1208(b) suit) is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations. *Id.* at 706–07, 86 S.Ct. at 1113–1114. The Postal Service attempts to distinguish *Hoosier Cardinal* on the ground that the Court in that case only meant to look to the state's statute of limitations where the plaintiff seeks damages under § 301. However, as the argument goes, where the plaintiff seeks to vacate an arbitration award, it is preferable, as well as permissible, to use the federal arbitration statute. *See Communications Workers of America v. Pacific Telephone and Telegraph*, 462 F.Supp. 736 (C.D.Cal.1978); *Gas Workers Local No. 80 v. Michigan Consolidated Gas*, 503 F.Supp. 155 (N.D.Ga.1980); *Lumber Production v. Champion International*, 486 F.Supp. 812 (D.Mont.1980); *Pizzuto v. Hall's Motor Transit Co.*, 409 F.Supp. 427 (E.D.Va.1976); *Hill v. Aro Corp.*, 275 F.Supp. 482 (N.D.Ohio 1967).

Unfortunately, for the Postal Service's position, the Supreme Court appears to be unimpressed with this distinction. In *United Parcel Service Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732, Justice Rehnquist, speaking for the majority, indicated that even where the case involves the setting aside of an arbitration award one is still to look to the state's statute of limitations. Thus does Justice Stewart remark that while he favors the application of the

or without regard to the citizenship of the       parties.

limitation period of § 10(b) of the National Labor Relations Act (NLRA), 29 U.S.C. § 160(b), in such "hybrid" actions, i. e., actions where the plaintiff's contract claim is predicated upon the establishing the breach of the duty of fair representation claim, it was his opinion that the Court believed it was obligated to apply the state statute of limitations. *Id.* at 62, 101 S.Ct. at 1564 (Justice Stewart, concurring). Indeed, the Supreme Court strongly suggests that *Hoosier Cardinal* governs this case:

> Obviously, if New York had adopted a specific 6-year statute of limitations for employee challenges to awards of a Joint Panel or similar body, we would be bound to apply that statute under the reasoning of Hoosier Cardinal. But in cases such as this, where generally state limitations periods were enacted prior to the enactment of § 301 by Congress in 1947, we are necessarily committed by prior decisional law to choosing among statutes of limitations none of which fit hand in glove with an action under § 301(a) of the LMRA. Given the choices present here, and the undesirability of the results of the grievance and arbitral process being suspended in limbo for long periods, we think the District Court was correct when it chose the 90-day period imposed by New York for the bringing of an action to vacate an arbitration award.

*United Parcel Service Inc. v. Mitchell, supra* 451 U.S. at 64, 101 S.Ct. at 1564. Accordingly, this Court finds itself constrained to apply Minnesota's statute of limitations for actions to vacate arbitration awards, Minn.Stat. § 572.19 (Subd. 2). As this amounts to a ninety-day time limitation, the Postal Service's motion to dismiss is granted.[2]

Our resolution of the above issue renders the Postal Service's second contention moot.

**B. The Union's Motion for Summary Judgment.**

■ There remains the question of the failure of fair representation by defendant Union with respect to this grievance. The plaintiff claims that the Union acted arbitrarily and in bad faith by its failure to analyze his rights to the job before it decided to represent Morrison. The crux of a labor union's duty of fair representation is a "statutory obligation to serve the interests of all members without hostility or discrimination towards any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842 (1967). It is only when a union acts in an arbitrary, discriminatory or bad faith manner that a breach of its duty of fair representation occurs. *Id.* at 190, 87 S.Ct. at 916.

■ The Supreme Court has emphasized that unions must have wide discretion to take such action as they believe is in the best interests of their members. *Ford Motor Co. v. Huffman,* 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953). The Eighth Circuit has also stressed the importance of preserving such union discretion by construing the unfair representation doctrine narrowly. *Mavis v. Brotherhood of Railway, Airline and Steamship Clerks,* 585 F.2d 926 (8th Cir. 1978); *Augspurger v. Brotherhood of Locomotive Engineers,* 510 F.2d 853 (8th Cir. 1975). As a result, the courts have generally looked for a "deliberate and severely hostile and irrational treatment" on the part of the union. *Motor Coach Employees v. Lockridge,* 403 U.S. 274, 301, 91 S.Ct. 1909, 1925, 29 L.Ed.2d 473 (1971). Mere errors in judgment are not enough. *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 571, 96 S.Ct. 1048, 1059, 48 L.Ed.2d 231 (1976). Nevertheless, the Eighth Circuit has also noted that improper motivation may not be required where perfunctory conduct is alleged and proved. *Ethier v.*

---

**2.** It is of some consequence that of the 42 states with specific limitation periods only two allow more than ninety days to bring an action to vacate an arbitration award. *United Parcel Service Inc. v. Mitchell,* 451 U.S. 63, n. 5, 101 S.Ct. 1564, 67 L.Ed.2d 732 (1981). Accordingly, the federal policy of affording finality to arbitration awards appears not to be jeopardized by the application of state statutes of limitations.

*United States Postal Service*, 590 F.2d 733 (8th Cir. 1979). Perfunctory conduct is action taken without concern or solicitude; i. e., a kind of indifference. *Id.* at 736. Such conduct can be so arbitrary as to constitute a violation of the Union's fiduciary duty to represent all of its members' interests and rights under the collective bargaining agreement. *See Smith v. Hussman Refrigerator Co.*, 619 F.2d 1229 (8th Cir. 1980). Thus, a breach of the duty of fair representation can arise from conduct which is somewhat less than deliberately hostile, yet is more than merely negligent.[3]

The question before this Court is whether the Union's failure to analyze the plaintiff's rights to the rural route position before it chose to represent Morrison can be construed to constitute either deliberate and severely hostile and irrational treatment or perfunctory conduct. The Union contends that this complaint alleges nothing more than negligence. The Court, however, disagrees. Cast in a most favorable light, the complaint can be read to make out an argument that the Union's conduct was sufficiently perfunctory as to be arbitrary.[4]

IT IS THEREFORE ORDERED That defendant Postal Service's motion to dismiss be Granted and that defendant Union's motion for summary judgment be Denied.

---

**3.** The Eighth Circuit in *Ethier* specifically declined to follow the Sixth and First Circuits' lead in holding union negligence to constitute a breach of its duty of fair representation. *See, Ruzicka v. General Motors Corp.*, 523 F.2d 306 (6th Cir. 1975); *DeArroyo v. Sindicato De Trobasadores Packing*, 425 F.2d 281 (1st Cir. 1970), *cert. den.*, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970).

**4.** *See, Smith v. Hussmann Refrigerator Co.*, 619 F.2d 1229 (8th Cir. 1980) (Union's good faith yet uncritical following of a policy promoting employees based on seniority rather than merit could be viewed as a perfunctory dismissal of plaintiff's rights and therefore so arbitrary as to constitute a breach of its duty of fair representation. *Id.* at 1239.)