Charles W. SMITH, John Pasley and Ralph Serini, Appellants, Cross-Appellees,

v.

HUSSMANN REFRIGERATOR COMPANY and Local 13889, United Steelworkers of America, Appellees, Cross-Appellants.

Nos. 78–1034, 78–1073 and 78–1092.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1979.

Decided Jan. 21, 1980.

Rehearing and Rehearing En Banc Denied March 26, 1980.

Louis Gilden, St. Louis, Mo., for Charles W. Smith et al.

Carl B. Frankel, Pittsburgh, Pa., for Union, Local 13889.

Mark J. Bremer, Kohn, Shands, Elbert, Gianoulakis & Giljum, St. Louis, Mo., for Hussmann Refrigerator.

Before GIBSON, Chief Judge, and LAY, HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY and McMILLIAN, Circuit Judges, en banc.

FLOYD R. GIBSON, Chief Judge.

Plaintiffs Charles Smith, John Pasley and Ralph Serini brought suit in the United States District Court for the Eastern District of Missouri against Hussmann Refrigerator Company (hereinafter referred to as Hussmann or the company) and Local 13889, United Steelworkers of America (hereinafter referred to as the union) for breach of the collective bargaining agreement and breach of the duty of fair representation. In Counts II and III, plaintiff Pasley, a black male, charged violations of 42 U.S.C. §§ 1981 and 1985 (1976), alleging that defendants discriminated against him on the basis of his race by denying him the right to make and enforce contracts and by conspiring to deprive him of the equal protection of the law.

The claims of breach of the collective bargaining agreement and breach of the duty of fair representation were tried to a jury which rendered a verdict against both defendants in favor of plaintiff Smith in the amount of $6500 and plaintiff Pasley in the amount of $2500. Also, in response to special interrogatories, the jury found that plaintiffs Smith and Serini should be awarded the classification of maintenance pipefitter, and that plaintiff Pasley's seniority in the pipefitter classification should be upgraded. The District Court[1] entered judgment in accordance with the jury verdict, but subsequently denied plaintiffs' motion for a supplementary judgment to effect the advisory opinion of the jury represented by the answers to special interrogatories, and granted defendants' motions for judgments notwithstanding the verdict.[2] Plaintiffs Pasley, Smith and Serini appeal from the grant of defendants' motions and the denial of their motion. They request reinstatement of the jury verdict and an order implementing the jury's advisory opinion.

The claims of race discrimination set forth in Counts II and III were removed from jury consideration, and the court, finding no evidence of racial discrimination, determined that neither defendant had violated 42 U.S.C. §§ 1981 and 1985.[3] Plaintiff Pasley claims error in the removal of this claim from the jury and also appeals from the decision on its merits.

On cross-appeal, defendants argue that if the judgment notwithstanding the verdict

---

1. The Honorable John F. Nangle, United States District Judge, Eastern District of Missouri.

2. The District Court opinion is reported at 442 F.Supp. 1144 (E.D.Mo.1977).

3. The District Court opinion is reported at 433 F.Supp. 690 (E.D.Mo.1977).

is reversed, they are entitled to a new trial for the reasons that plaintiffs had no right to a jury trial; certain jury instructions were improper; the District Court erred in excluding evidence of the National Labor Relations Board's (NLRB) dismissal of plaintiffs' charges of unfair representation; and the award indicates that the jury was impassioned or confused.

This appeal was initially submitted to a panel of this court which issued an opinion on January 3, 1979. Thereafter a petition for rehearing en banc was filed and granted. The panel opinion is hereby vacated and the judgment is modified in accordance with this opinion. We affirm the District Court's judgment on Counts II and III of the complaint but reverse the District Court's granting of the motions notwithstanding the verdict and reinstate the jury verdict against Hussmann and the union. We further remand to the District Court for reconsideration of whether the jury's advisory opinions regarding classification and seniority status should be implemented.

I.

At all times relevant to this proceeding, plaintiffs were employees at Hussmann's Bridgeton, Missouri, plant and were members of the union, and a collective bargaining agreement between defendants was in effect pursuant to which the union represented approximately 1500 production and maintenance employees at Hussmann's Bridgeton plant. This agreement specifically provided that in the matter of promotions seniority should govern when the factors of ability and skill are substantially equal between those being considered.[4]

On April 22, 1975, Hussmann, in accordance with the collective bargaining agreement, posted two openings for temporary positions as maintenance pipefitters. Sixty-four employees bid for these openings. Hussmann's maintenance foreman, Schwartz, interviewed groups of the most senior employees and selected Pasley and Smith on the basis of superior skill and ability. On May 6, 1975, Hussmann posted an opening for a permanent maintenance pipefitter. Although forty-six employees bid for this position, it was awarded to Pasley since he was already working in the classification. Three more positions in this classification, one permanent and two temporary, opened on May 13, 1975. An employee who had previously held the classification received the permanent job. Plaintiff Serini and another employee, Watson, received the temporary positions. Subsequently, plaintiff Smith bid into a permanent position as maintenance pipefitter as a result of an opening posted May 20, 1975.

Twenty-six unsuccessful bidders filed grievances claiming that Hussmann had violated the collective bargaining agreement in making the promotions. Of these grievances, the union selected four to process. These four had been filed by employees with greater seniority than the successful bidders. The union processed these grievances through the five-step grievance and arbitration procedure, as described in the collective bargaining agreement.

At the arbitration hearing, the union called each of the four grievants to testify about his skill and ability. The successful bidders were not invited to attend the hearing and their only representation was presented by Hussmann's foreman, Schwartz, who related the substance of his interviews with the successful bidders as well as the substance of his interviews with the grievants.

---

4. The collective bargaining agreement provides in relevant part:

Article 9, SECTION 1. * * *
Seniority shall be by job classifications unless otherwise specified below.
Seniority, skill and ability to perform the work required shall be considered by the Company in making promotions, transfers, layoffs and callbacks. Where skill and abili-

ty to perform are substantially equal, seniority shall govern. * * *
Article 10, SECTION 2. Ability and required performance of an employee on the job shall be factors considered for promotion. When such factors are substantially equal between those being considered, seniority shall govern. * * *

On October 3, 1975, the arbitrator issued his award. He clearly denied two of the grievances on the grounds that the grievants lacked substantial equality of skill and ability. The arbitrator granted two grievances, those of Dattilo and Krassinger, and ordered Hussmann to give them the jobs with retroactive seniority and back pay. Further, the award named as those entitled to hold the maintenance pipefitter classification: Dattilo, Pasley, Smith, Watson, Krassinger and Serini.

Hussmann originally interpreted the arbitrator's decision as awarding the classification to all six employees named, with their seniority in the classification in the order listed. While the plaintiffs did not rejoice at this outcome, they were satisfied with this resolution of the dispute because they retained the classification.[5] The union, however, objected to the award arguing that the arbitrator did not have authority to create six maintenance pipefitter classifications from four posted jobs. In addition the award had two technical errors: it misstated the seniority of plaintiff Smith, giving him ten years more seniority than he actually had, and awarded Watson a position for which he had not bid.

Officials of the union and the company met to discuss these problems with the award. At this time they agreed that only four employees should be granted the classification and that those employees would be Dattilo, Krassinger, Watson and Pasley. Then, ostensibly to seek "clarification" of the award, they returned to the arbitrator. A meeting for this purpose was held October 31, 1975. No additional testimony was taken and no employees were present except the representatives of Hussmann and the union. The parties informed the arbitrator of their prior agreement and presented him with the correct seniority dates and bid sheets.

The arbitrator's supplemental and corrective decision, issued November 4, 1975, awarded the pipefitter classification to the four most senior employees in the order of their seniority. Thus, Dattilo, Krassinger, Watson, and Pasley received the classification.[6] Smith and Serini were entitled to be paid for the time they actually performed the job, but on any future vacancies their bid would be considered on the same basis as any other employee without seniority in the classification. This decision, however, retained the error in plaintiff Smith's seniority, which the arbitrator later corrected after it was brought to his attention.

At the time of the second meeting with the arbitrator, the parties also agreed that a grievance filed against Serini by another employee, Pogue, would be processed against Pasley instead of Serini. At the time Pogue filed the grievance, Serini appeared to hold the fourth senior position in the classification, but by the time the union arbitrated the grievance Pasley held that position. Pasley requested permission to be present at this arbitration hearing, but his request was denied. Pogue attended the hearing at the union's invitation. Subsequently, Pogue's grievance was denied.

Plaintiffs, who had learned from a union official the result of the second meeting with the arbitrator before he issued his decision, attempted to file grievances to challenge the November 4 arbitration decision. Smith and Serini alleged that they were entitled to the classification, and Pasley challenged the realignment of his seniority. The union refused to process the grievances, relying on the language of the collective bargaining agreement that requires an arbitrator's decision to be considered the final resolution of a dispute. In the process of trying to file his grievance, plaintiff Smith asked the president of the local union if he could be permitted to speak at a regular monthly union meeting

---

**5.** The mere status of the classification was important because employees with the classification have priority in filling vacancies.

**6.** Because the arbitrator demoted Pasley to the lowest seniority in the classification, he was temporarily removed from the position due to a reduction in the work force. He subsequently bid back into the position and held it at the time of trial.

in order to bring the matter before the membership. He was told that he would not be given the floor. Plaintiff Serini mailed a written request to the union to have the matter placed on the agenda of the next monthly scheduled meeting of the local union, but he never received a response to this request. Union officials, however, did report the results of the arbitration hearings to the membership at a regular meeting.

## II.

On appeal, plaintiffs contend that the District Court erred in granting the defendants' motions for judgment notwithstanding the verdict because the jury was properly instructed on the relevant law and was presented with sufficient evidence to find that the union had breached its duty of fair representation and that defendants breached the terms of the collective bargaining agreement.

The standard for granting judgment notwithstanding the verdict is the same as for a directed verdict. *Schneider v. Chrysler Motors Corp.*, 401 F.2d 549, 554 (8th Cir. 1968). As stated by this court in *Lord v. Wilkerson*, 542 F.2d 1034, 1035 (8th Cir. 1976):

> A motion for a directed verdict should be granted "only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party." *Barclay v. Burlington Northern, Inc., supra*, 536 F.2d 263 at 267 (8th Cir.); *Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co.*, 523 F.2d 833, 836 (8th Cir. 1975). As this Court has noted,
>
> > [A] motion for a directed verdict is properly denied where the evidence presented allows reasonable men in a fair exercise of their judgment to draw different conclusions. * * * In making this determination, the evidence, together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party. (Citations omitted.)

*Vickers v. Gifford-Hill and Co.*, 534 F.2d 1311, 1315 (8th Cir. 1976), *quoting Giordano v. Lee*, 434 F.2d 1227, 1231 (8th Cir. 1970), *cert. denied*, 403 U.S. 931, 91 S.Ct. 2250, 29 L.Ed.2d 709 (1971).

*See also Voegeli v. Lewis*, 568 F.2d 89, 92 (8th Cir. 1977); *Banks v. Koehring Co.*, 538 F.2d 176, 178 (8th Cir. 1976); *Griggs v. Firestone Tire and Rubber Co.*, 513 F.2d 851, 857 (8th Cir.), *cert. denied*, 423 U.S. 865, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975).

After a careful review of the jury instructions and the evidence, we conclude that the jury's verdict should have been upheld and reverse the judgment of the District Court on this matter.

## III.

■ The duty of fair representation developed as a corollary to the collective bargaining system promoted by Congress and administered by the NLRB. This system grants to a union the power to act as exclusive bargaining representative and necessarily subordinates the interests of an individual employee to the collective interests of all employees in the bargaining unit. *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). Because of the reduction in the individual rights of employees thus represented by a union, the controlling statutes have long been interpreted as imposing upon the union, as exclusive bargaining agent in the negotiation and administration of the collective bargaining contract, a responsibility and duty fairly to represent as individuals as well as collectively the employees within the bargaining unit. *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Ford Motor Co. v. Huffman*, 345 U.S. 330, 337–38, 73 S.Ct. 681, 97 L.Ed. 1048; *Steele v. Louisville & Nashville Railroad Co.*, 323 U.S. 192, 202, 65 S.Ct. 226, 89 L.Ed. 173 (1944).

The rationale for this statutory interpretation was clearly expressed by the United States Supreme Court:

> It is a principle of general application that the exercise of a granted power to act in behalf of others involves the as-

sumption toward them of a duty to exercise the power in their interest and behalf, and that such a grant of power will not be deemed to dispense with all duty toward those for whom it is exercised unless so expressed.

*Steele v. Louisville & Nashville Railroad Co.*, 323 U.S. 192, 202, 65 S.Ct. 226, 232, 89 L.Ed. 173 (1944).

While the scope of the duty of fair representation has never been precisely defined, it "is a legal term of art, incapable of precise definition," and calls for an ad hoc review of each factual situation, *Griffin v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW*, 469 F.2d 181, 182 (4th Cir. 1972), its evolution through the fires of court decisions leaves no doubt about its purpose. *St. Clair v. Local Union No. 515 of the International Brotherhood of Teamsters*, 422 F.2d 128, 130 (6th Cir. 1969). The duty of fair representation balances the collective and the individual interests of employees in the bargaining unit as these interests are represented by a labor organization in order to promote the goals of congressional labor legislation, to minimize industrial strife and encourage full production.[7] In particular, "the duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca v. Sipes, supra*, 386 U.S. at 182, 87 S.Ct. at 913.

In order to meet its purpose, the scope of the duty of fair representation is in some ways very broad. The responsibility fairly to represent employees is equal in scope to the union's broad authority in the negotiation and administration of the collective bargaining agreement. *Humphrey v. Moore*, 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). Thus the duty attaches to all stages of the negotiation and administration process and is owed to all employees within the unit represented. However, because of the need to balance the individual interests of employees with their collective interests, the duty of fair representation must not be construed to subvert the basic purposes of organized labor by inhibiting union representation of collective interests. The Supreme Court has stated that in the negotiation process, "[a] wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Ford Motor Co. v. Huffman, supra*, 345 U.S. at 338, 73 S.Ct. at 686. The standard by which to measure union conduct was further defined in *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In the administration of the collective bargaining agreement, the union has "a statutory obligation to serve the interests of all members [of a designated unit] without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.* at 177, 87 S.Ct. at 910. *See also King v. Space Carriers, Inc.*, 608 F.2d 283 at 286–287 (8th Cir. 1979).

The Fourth Circuit Court of Appeals clearly articulated the import of *Vaca* in

---

7. 29 U.S.C. § 141(b) (1976) provides:

 (b) Industrial strife which interferes with the normal flow of commerce and with the full production of articles and commodities for commerce, can be avoided or substantially minimized if employers, employees, and labor organizations each recognize under law one another's legitimate rights in their relations with each other, and above all recognize under law that neither party has any right in its relations with any other to engage in acts or practices which jeopardize the public health, safety, or interest.

 It is the purpose and policy of this chapter, in order to promote the full flow of commerce, to prescribe the legitimate rights of both employees and employers in their relations affecting commerce, to provide orderly and peaceful procedures for preventing the interference by either with the legitimate rights of the other, to protect the rights of individual employees in their relations with labor organizations whose activities affect commerce, to define and proscribe practices on the part of labor and management which affect commerce and are inimical to the general welfare, and to protect the rights of the public in connection with labor disputes affecting commerce.

*Griffin v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW,* 469 F.2d 181, 183 (4th Cir. 1972):

> A union must conform its behavior to each of these three separate standards. First, it must treat fractions and segments of its membership without hostility or discrimination. Next, the broad discretion of the union in asserting the rights of its individual members must be exercised in complete good faith and honesty. Finally, the union must avoid arbitrary conduct. Each of these requirements represents a distinct and separate obligation, the breach of which may constitute the basis for civil action.
>
> &ast; &ast; &ast; &ast; &ast; &ast;
>
> &ast; &ast; &ast; Without any hostile motive of discrimination and in complete good faith, a union may nevertheless pursue a course of action or inaction that is so unreasonable and arbitrary as to constitute a violation of the duty of fair representation.

### IV.

Applying this standard to the union's conduct in processing the grievances challenging plaintiffs' promotions, we find that sufficient evidence existed for the jury to conclude that the union exceeded the permissible range of reasonableness with regard to its representation of plaintiffs. There can be no question that the scope of the duty of fair representation encompasses plaintiffs' interests in this situation. Plain-

tiffs were employees within the bargaining unit and processing grievances is within the broad authority of the union as the employees' exclusive agent in the administration of the collective bargaining agreement.[8] *See Vaca v. Sipes, supra,* 386 U.S. at 177, 87 S.Ct. 903. The processing of the grievances against plaintiffs was intended to and did decide plaintiffs' rights to the promotions, which plaintiffs had received from management on the basis of their superior skill and ability. *See Tedford v. Peabody Coal Company,* 533 F.2d 952, 959 (5th Cir. 1976) ("the union in making its decision not to put [grievant] back in his old position had a duty to consider not only the interests of [the grievant] but also those of the twelve employees who would suffer from the resulting rollback &ast; &ast; &ast;."); *Bond v. Local Union 823, International Brotherhood of Teamsters,* 521 F.2d 5, 9 (8th Cir. 1975) (union processed "test" case grievance rather than plaintiff's grievance). This is analogous to when a union processes the grievances of some employees regarding their seniority status. Upholding the grievances necessarily derogates the seniority of other employees. *Butler v. Local Union 823, International Brotherhood of Teamsters,* 514 F.2d 442, 445 (8th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975). In that situation the union must fairly represent both groups of employees and may take a position in favor of one group only on the basis of an informed, reasoned judgment regarding the merits of the claims in terms of the language of the collective bargaining agreement.[9] *See Humphrey v.*

---

8. The collective bargaining agreement between Hussmann and the union granted to the union the exclusive power to process and settle grievances and to carry cases to arbitration.

 By virtue of this contractually derived status as the exclusive enforcer of the collective agreement, the union assumes a heavy responsibility to exercise its control on behalf of, rather than against the individual employee. The collective agreement creates rights in the individual employee which are enforceable under section 301. In the absence of a union controlled grievance procedure the individual can sue and enforce his rights in his own behalf. The effect of the contractual provision giving the union exclusive control

over the grievance procedure is to deprive the individual of his ability to enforce the contract on his own behalf. The union, having deprived the individual of his ability to enforce his rights, has a special obligation to act on his behalf.

Summers, *The Individual Employees' Rights Under The Collective Agreement: What Constitutes Fair Representation?* 126 U.Pa.L.Rev. 251, 256 (1977) (footnote omitted).

9. It is obvious that mere discrimination between employees by the union cannot be the basis for a claim of unfair representation. Employees are not all similarly situated and a union needs to make many legitimate differentiations in order to represent them. It is equal-

*Moore,* 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964); *Deboles v. Trans World Airlines, Inc.,* 552 F.2d 1005, 1015 (3d Cir.), *cert. denied,* 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977); *Price v. International Brotherhood of Teamsters,* 457 F.2d 605, 611 (3d Cir. 1972).

This duty fairly to represent all employees is not diminished because plaintiffs' rights were created by Hussmann. The particular provision of the collective bargaining agreement at issue provided that employees with superior skill and ability were entitled to promotion over those with greater seniority only if the company elected to assert its right to promote on the basis of skill and ability. This provision, typically referred to as a "modified seniority clause," controlled the promotion machinery. The company asserted its right to choose on the basis of skill and ability because of the belief that the position of maintenance pipefitter required greater expertise than most positions within the company. It is significant that no openings in this classification had occurred for over thirteen years; thus the company did not have any established past practices for promotions into this classification with which the union could challenge compliance. Hussmann had

a right to choose on the basis of skill and ability, and by its exercise of this right it vested plaintiffs with rights under the collective bargaining agreement to hold the positions to which they were promoted.[10] The collective bargaining agreement clearly provided that employees promoted by the company on the basis of superior skill and ability are entitled to hold their promotions even against challenges by employees with greater seniority. Thus, plaintiffs possessed rights under the collective bargaining agreement which the union had a fiduciary duty to protect.[11] The fact that their rights were contingent upon selection by the company became irrelevant once that contingency was resolved. The condition of selection is no different from the condition that plaintiffs possess superior skill and ability, which was the condition necessarily challenged by the grievants.

The nature of the union's duty in a dispute among employees is not changed by the company's taking a position in the grievance procedure. Even though a company may take a position favorable to a particular group of employees, the union may not abandon that particular group to the representation as afforded by the com-

ly apparent that a union and every employee it represents will not always agree upon the lines drawn and the perceived legitimate needs and rights of one group as opposed to another. In order to preclude imposing liability on a union because of mere differences of opinion or an error in judgment this court has frequently stressed the importance of improper motivation or bad faith in finding that a union's discrimination constitutes a breach of the duty of fair representation. *Mavis v. Brotherhood of Railway, Airline and Steamship Clerks,* 585 F.2d 926, 930–31 (8th Cir. 1978) (union decision "based upon a pragmatic assessment of the likelihood of success"); *Florey v. Air Line Pilots Association,* 575 F.2d 673, 676 (8th Cir. 1978) (no allegation of bad faith or arbitrary conduct); *Augspurger v. Brotherhood of Locomotive Engineers,* 510 F.2d 853, 859 (8th Cir. 1975) (unsupported conclusory allegations without factual inference of bad faith or discriminatory intent insufficient to invoke fair representation exception to doctrine of primary jurisdiction in ICC). In the situation of a direct conflict between employees, a union's decision to support a particular position must be made in good faith and not arbitrarily. This would seem generally to require an informed, rea-

soned judgment regarding the merits of the claims.

10. Hussmann's promotion of the junior employees on the basis of substantially superior skill and ability vested them with rights as third party beneficiaries of the collective bargaining agreement. Thus the company was bound to respect these rights and follow the terms of the collective bargaining agreement in the event it desired to remove the employees from the classification.

11. Because by the terms of the collective bargaining agreement only the company had the power to vest employees with a right to a promotion, the union obviously owed no duty to represent employees other than those selected by the company and those with greater seniority than the employees selected. No other employees could possibly have any rights to the promotions under the collective bargaining agreement. *Local Union 1357, International Brotherhood of Electrical Workers, AFL v. Mutual Telephone Company,* 23 Lab.Cas. ¶ 67,634 at 83,792 (Sup.Ct.Hawaii 1952.)

pany favoring them. *See Deboles v. Trans World Airlines, Inc.*, 552 F.2d 1005 (3d Cir.), *cert. denied*, 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977); *Price v. International Brotherhood of Teamsters*, 457 F.2d 605 (3d Cir. 1972). The union is the agent of all employees in the unit and owes a fiduciary duty to represent their interests and rights under the collective bargaining agreement. Here the union not only abandoned the plaintiffs but took an adversary attitude toward them regarding the positions they had received by reason of the company's opinion of their skill and ability. The union took the position that any representation of plaintiffs would be made by the company, while the company declared that it had no duty to represent plaintiffs and properly protected only its self-interest which may or may not have corresponded to the interests of plaintiffs.

The first aspect of the union's conduct in processing the grievances challenging plaintiffs' promotions that indicates possible substandard representation of plaintiffs' interests is the union's strict adherence to the principle of seniority. The union argues that in processing the grievances it merely followed a policy of favoring employees with the greatest seniority, and that this cannot be a ground for finding a breach of the duty of fair representation because it was merely in good faith applying a neutral principle. Since we agree with the District Court's finding that there is no evidence that personal hostility toward plaintiffs motivated the use of this policy, we are squarely presented with the issue of whether this course of action combined with the other elements of the union's conduct toward plaintiffs could be found "so unreasonable and arbitrary as to constitute a violation of the duty of fair representation." *Griffin v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW*, 469 F.2d 181 (4th Cir. 1972).

▮ The union's choice to process all grievances based on seniority discriminated against employees receiving promotions on the basis of merit. This conduct may be viewed as a perfunctory dismissal of the interests and rights of plaintiffs. The union simply failed to represent them in any way. The modified seniority clause specifically required balancing the interests of merit and seniority whenever Hussmann deemed that the position warranted selection on the basis of merit. Under the collective bargaining agreement, after the company chose to select on the basis of merit, three separate considerations were relevant in determining the right of any employee to be promoted. These were (1) his selection by the company, (2) on the basis of skill and ability, (3) superior to the skill and ability of any senior employee who had bid for the position. Disregard for the qualification of superior skill and ability could manifest an arbitrary and perfunctory approach to promotion interests, as could ignoring the qualification of seniority or selection by the company. *See Griffin v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW*, 469 F.2d 181, 183 (4th Cir. 1972); *De Arroyo v. Sindicato de Trabajadores Packing House, AFL–CIO*, 425 F.2d 281, 284 (1st Cir.), *cert. denied sub nom. Puerto Rico Telephone Co. v. De Arroyo*, 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970).

As one commentator, after reviewing the applicable cases, concluded:

When the Union's effort to represent a member of the collective bargaining unit falls below the level at which the court can conclude that the union has made a conscious, earnest effort to represent him, liability should flow. Upon a claim of substandard treatment, the union should be required to come forward with evidence to show why it followed the course of representation that it did. If the union's behavior is based on a conscious assessment of fairly competing values, it should be given broad discretion in its choice of representation tactics. But the union should not be allowed to plead, in effect, that it chose the easier path because of convenience or rigid adherence to "union policy."

Bryson, *A Matter of Wooden Logic: Labor Law Preemption and Individual Rights*, 51 Tex.L.Rev. 1037, 1102 (1973).

In this case the union has taken the position that "a union's freedom to follow seniority in job disputes cannot coexist with a duty to evaluate the comparative skills of competing employees." It initially selected which grievances it would process solely on the basis of seniority. It never inquired of plaintiffs about their experience or other qualifications. The only evidence presented to indicate any concern on the part of the union about the relative skill and ability of plaintiffs was the testimony of the union's international representative who stated that he had reviewed the reports of foreman Schwartz regarding his selection of plaintiffs. In contrast to this superficial review of plaintiffs, the union representative personally discussed the backgrounds, experience, and other qualifications of the senior grievants with them and invited them to testify at the first arbitration hearing.

While we do not suggest that a union must hold internal hearings to investigate the merits of every grievance brought to it, in certain situations it may be inappropriate for a union to tie its own hands by blind adherence to a policy of favoring employees with seniority in order to avoid disputes between employees. "Conflict between employees represented by the same union is a recurring fact. To remove or gag the union in these cases would surely weaken the collective bargaining and grievance processes." *Humphrey v. Moore, supra*, 375 U.S. at 349–50, 84 S.Ct. at 372. The need for a union fairly to evaluate the merits of grievances has been recognized repeatedly. "In administering the grievance and arbitration machinery as statutory agent of the employees, a union must, in good faith and in a nonarbitrary manner, make decisions as to the merits of particular grievances." *Vaca v. Sipes, supra*, 386 U.S. at 194, 87 S.Ct. at 919. *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 558, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976); *Foust v. International Brotherhood of Electrical Workers*, 572 F.2d 710, 715–16 (10th Cir. 1978), *rev'd in part on other grounds* 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979); *Minnis v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW*, 531 F.2d 850, 853–54 (8th Cir. 1975); *Ruzicka v. General Motors Corp.*, 528 F.2d 912 (6th Cir. 1975). In particular, this court has recognized that certain circumstances compel a union to evaluate the individual capabilities of employees. *Petersen v. Rath Packing Co.*, 461 F.2d 312, 316 (8th Cir. 1972). In the context of this case the jury may have concluded that the union failed to take adequate measures to insure a fair resolution of the dispute created by the union's processing of the grievances of the senior employees.

By negotiating the modified seniority clause to control promotion decisions, the union has limited management in an area regarded by management as one of its most important prerogatives. This limitation on management has shifted some of the burden for making promotions onto the union. Responsible union participation can ensure that the use of the seniority criterion in these decisions is compatible with efficiency and employee morale. Union involvement that is not characterized by care and thoughtful preplanning can lead to subversion of the collective bargaining agreement by processing baseless grievances. S. H. Slichter, J. J. Healy & E. R. Livernash, The Impact of Collective Bargaining on Management 178–210 (1960). *See also Humphrey v. Moore, supra*, 375 U.S. at 349–50, 84 S.Ct. 363. A policy of processing all grievances based on seniority regardless of their merit may even significantly alter the negotiated contract by chilling the exercise of the prerogative to promote on the basis of merit. Since a business runs on a cost-benefit basis, the cost of arbitrating the grievances of all senior employees may at times be greater than the benefit of advancing the most skilled worker. Adherence to the union's policy in this situation would effectively set aside a provision of

the collective bargaining agreement.[12] "Such a cavalier treatment of the contract is scarcely consistent with the contemplation of the parties and seems contrary to the union members' understanding and expectations when they ratified the contract." Summers, *The Individual Employee's Rights Under the Collective Agreement: What Constitutes Fair Representation?* 126 U.Pa.L.Rev. 251, 264 (1977). *See also Vaca v. Sipes, supra,* 386 U.S. at 191–92, 87 S.Ct. 903; *Humphrey v. Moore, supra,* 375 U.S. at 349–50, 84 S.Ct. 363.

■ The jury could also have found evidence of a breach of the duty of fair representation on the basis that the union failed to notify plaintiffs of the arbitration hearing or invite them to attend. Regardless of the initial evaluation of the grievances, it is obvious that once a union has chosen to arbitrate a dispute adequate presentation of all employee claims is necessary to ensure fairness in the arbitration.[13] *See* Clark, *The Duty of Fair Representation: A Theoretical Structure,* 51 Tex.L.Rev. 1119, 1169 (1979). Since a union's failure to inform an employee whose interests are before an arbitrator of the arbitration hearing is not necessarily sufficient to support a claim of unfair representation, courts have carefully searched the records for prejudice to the employee. When the position of the employee has been adequately presented, no breach has been found. *Cf. King v. Space Carriers, Inc.,* 608 F.2d 283, at 288–289 (8th Cir. 1979). For example, in *Humphrey v. Moore,* 375 U.S. 334, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), a joint committee decided to dovetail the seniority lists of two merging companies. The Supreme Court, holding that the union was entitled to take a position in the dispute between employ-

ees, carefully noted that the disfavored employees had been given notice of the hearing and that three stewards representing them were present at the hearing and given every opportunity to state their position. *Humphrey v. Moore, supra,* 375 U.S. at 350–51, 84 S.Ct. 363. *See also Ramsey v. NLRB,* 327 F.2d 784, 788 (7th Cir.), *cert. denied,* 377 U.S. 1003, 84 S.Ct. 1938, 12 L.Ed.2d 1052 (1964); *Bernard v. McLean Trucking Co.,* 429 F.Supp. 284, 286–87 (D.Kan.1977); *Siskey v. General Teamsters, Chauffeurs, Warehousemen & Helpers, Local No. 261,* 419 F.Supp. 48, 53 (W.D.Pa.1976); *DeBelsey v. Chemical Leaman Tank Lines,* 368 F.Supp. 1159, 1163 (E.D.Pa.1973); *Davidson v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local No. 1189,* 332 F.Supp. 375, 378–79 (D.N.J.1971). However, when the employee is prejudiced by not having notice of the hearing because the union inadequately prepared or presented his or her interests, a breach of the duty of fair representation has been demonstrated. *Bond v. Local Union 823, International Brotherhood of Teamsters,* 521 F.2d 5, 9 (8th Cir. 1975); *Thompson v. International Association of Machinists,* 258 F.Supp. 235, 239 (E.D.Va.1966).

The union claims that plaintiffs could not have been deprived of a fair hearing because Hussmann fully and adequately defended their position. The company, however, has consistently taken the position that it had no duty to represent plaintiffs. At trial, Hussmann presented evidence that even plaintiffs did not expect it to represent their interests. Furthermore, regardless of whether plaintiffs were inadequately represented at the first arbitration hearing, the evidence is clear that no one

---

**12.** As stated by the Third Circuit in *Bazarte v. United Transportation Union,* 429 F.2d 868, 872 (3d Cir. 1970); "The union has an obligation in exercising its power as bargaining agent to act fairly under the collective bargaining agreement and not to assert or press grievances which it believes in good faith do not warrant such action."

**13.** As a corollary it should be noted that a completely fair arbitration of a dispute would

necessarily insulate a union from any alleged breaches of its duty of fair representation because the allegedly aggrieved employee could not have suffered any injury from the union's conduct. If an employee's position is changed as a result of a fair arbitration, the union cannot be found to have caused the change. Only if the arbitration is tainted in some manner by the union's conduct can the result of an arbitration be attributable to the union.

asserted their interests at the time of resubmission to the arbitrator.

The union also appears to contend that specific representation of plaintiffs was unnecessary since the only evidence of plaintiffs' skills and abilities cognizable at the hearing was as they were known by the company foreman, Schwartz, who had selected plaintiffs. The union asserts that this obviated any need for plaintiffs to testify before the arbitrator. The facts belie this argument. Although at the first arbitration hearing Schwartz testified as to his evaluation and knowledge of the skill and abilities of both plaintiffs and the grievants, the union requested the grievants to attend and testify as to their abilities and work experience. This *ex parte* presentation by the union may well have hindered plaintiffs' effort to secure an objective consideration of their promotions on the basis of superior skill and ability because the arbitrator's decision appears to rely heavily upon the testimony of the grievants relating their background experience in terms of work they performed outside the plant. The arbitrator clearly viewed this experience as determinative in his decision regarding relative skill and ability. Although the company had some knowledge of plaintiffs' outside work, more work experience, while in a sense cumulative, could indicate greater skill and ability. Since the grievants appeared to have experience not related to the arbitrator by the company representative who interviewed them, it can be inferred that plaintiffs would also be able to relate their outside work experience better than the company representative. Thus, the failure to invite plaintiffs to attend the arbitration hearing may have left them inadequately represented regarding a crucial factor in dispute.

██ The fairness of the ultimate arbitration award also necessarily involved consideration of the union's and company's resubmission to the arbitrator of the initial decision. The jury could have found that the resubmission constituted a breach of the duty of fair representation and breach of the collective bargaining agreement's provision providing that arbitration is a final and binding resolution of a dispute.[14] It was undisputed that at the second hearing no additional testimony was taken. Only representatives of Hussmann and the union met with the arbitrator, presented him with the correct seniority dates and bid sheets, and requested him to clarify which four employees should be awarded the four positions that had opened. Some testimony, however, indicated that the parties meeting with the arbitrator also told him, pursuant to a previous agreement, specifically which four employees should receive the positions. In this context, the jury was presented with the issue of whether the second hearing resulted in a substantial change from the original decision or merely a "clarification" of it. If an agreement between the union and the company substantially altered the award by taking away plaintiffs' rights granted by arbitration, defendants could have been found to have violated the "final and binding" provision of the collective bargaining agreement.

By the first decision of the arbitrator, six employees were granted the maintenance pipefitter classification. Seniority was designated in the following order: Dattilo, Pasley, Smith, Krassinger, Watson, Serini. According to the supplemental decision, only Dattilo, Watson, Krassinger, and Pasley were granted the classification, with their seniority realigned in the order listed. It was understood at the time of both decisions that only four actual openings in the classification would be filled.

While defendants argue that this changed result must be viewed as a clarification because the first award could not be implemented, the record reveals substantial support for the position of plaintiffs that there would be no problem with permitting an employee to hold a classification status even though he did not currently work within it.

14. Article 7, Section 1 of the collective bargaining agreement, outlining the grievance procedure, provides in relevant part:

The majority decision of the arbitration board shall be final and binding upon the parties. * * *

Plaintiffs' position appears to have been the company's initial response and consistent with some past practice. Additionally, it should be noted that in his original decision the arbitrator specifically found that Pasley possessed substantially greater skill and ability than Krassinger, yet in the supplemental decision Pasley's seniority was demoted to below that of Krassinger.

■ The last element of the union's conduct toward plaintiffs that may indicate unfair representation is the failure to accept and process plaintiffs' grievances or to place the matter on the agenda of a regular union meeting. After the revision of the arbitration decision pursuant to the second hearing, plaintiffs filed grievances challenging the award. The union simply refused to accept the grievances. Plaintiffs complained to union officials regarding what they perceived as unfair treatment and requested permission to speak to the union membership to discuss their treatment. They mailed grievance forms directly to Hussmann, but it returned them because they were not signed by the union and, therefore, could not be processed under the terms of the collective bargaining agreement. The union defends its conduct by stating that it denied the grievances on the basis that the final and binding clause of the collective bargaining agreement prohibited processing them and that it did report the results of the arbitration at a regular union meeting. Although a union clearly has the authority to deny grievances based upon a good faith evaluation, *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1965), in view of the overall conduct of defendants the jury may have perceived the conclusion of the union regarding the effect of the final and binding clause as unreasonable and not made in good faith. The original award had been resubmitted to the arbitrator despite the final and binding clause. The plaintiffs had not been fully represented at the arbitration hearings. Also, plaintiffs presented some evidence that one of the successful grievants, Dattilo, who had then been a union official, had falsified his testimony at the first arbitration hearing.

This case involved a complex course of conduct on the part of defendants and the evidence interrelates and is susceptible of different reasonable inferences. In a fair exercise of judgment, reasonable persons could have concluded that defendants breached the collective bargaining agreement and the union breached its duty to represent plaintiffs fairly.

V.

■ On appeal, plaintiff Pasley claims that the District Court clearly erred by removing Pasley's claim of race discrimination from consideration of the jury and by holding that the evidence failed to establish that defendants violated his rights on account of his race. We find these contentions to be without merit and affirm the District Court on the basis of its well-reasoned memorandum opinion. Plaintiff Pasley failed to establish that any action taken by defendants was the result of race discrimination. The evidence revealed that both the company and the union treated Pasley in exactly the same manner as they treated the other plaintiffs, who are white. The only difference related to the Pogue grievance, which was arbitrated against Pasley although Pogue had filed it against Serini. Although this, along with the rest of the union's conduct toward Pasley, can be explained on the basis of his relative seniority status, it also could not possibly be the basis of a damage claim since the grievance was denied at arbitration and Pasley retained his position. In this context, Pasley's controverted testimony that a union official had stated in a joking manner that Pasley's position was being challenged because of his race cannot be the basis for a claim of race discrimination under 42 U.S.C. §§ 1981 and 1985.

The removal of this claim from the jury cannot be grounds for reversal since plaintiff Pasley did not present sufficient evidence to support a jury verdict in his fa-

vor.[15] *See Hayes v. Consolidated Service Corp.*, 517 F.2d 564, 565–66 (1st Cir. 1975); *Minnis v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW*, 531 F.2d 850, 853 (8th Cir. 1975); *King v. United Benefit Fire Insurance Co.*, 377 F.2d 728, 731 (10th Cir.), *cert. denied*, 389 U.S. 857, 88 S.Ct. 99, 19 L.Ed.2d 124 (1967); *Freeman Contractors, Inc. v. Central Surety and Insurance Corp.*, 205 F.2d 607, 612 (8th Cir. 1953).

## VI.

Both Hussmann and the union assert that in the event that the judgment notwithstanding the verdict on Count I is reversed, errors in the trial stage warrant remanding for a new trial.

 First, the union argues that plaintiffs had no right to a jury trial, although it candidly concedes that the law in this circuit is contrary to its position. *Minnis v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW*, 531 F.2d 850 (8th Cir. 1975), explicitly held that plaintiffs charging a breach of the duty of fair representation are entitled to a jury trial. In view of the union's failure to show any error in the analysis made in *Minnis*, we decline to overrule its holding.

The union also alleges that the jury was improperly instructed concerning the duty of fair representation. Part of the instructions seemed to indicate that a verdict could be entered against the union merely upon a finding that by not processing plaintiffs' grievances the union had violated a provision of the collective bargaining agreement. As the union, however, acknowledges, this instruction must be read in the context of the charge as a whole, *Simpson v. Norwesco, Inc.*, 583 F.2d 1007, 1013 (8th Cir. 1978); *Fields v. Chicago, Rock Island and Pacific Railroad Co.*, 532 F.2d 1211, 1213 (8th Cir.

1976); *Alabama Great Southern Railway Co. v. Chicago & Northwestern Railway Co.*, 493 F.2d 979, 986 (8th Cir. 1974); *Jiffy Markets, Inc. v. Vogel*, 340 F.2d 495, 500 (8th Cir. 1965). Directly after the allegedly erroneous instruction, the court instructed:

> The union's right to consider grievances of its members and to make good faith decisions relative thereto carries with it a broad discretion. That discretion means that the union's decision should not be disturbed so long as it was made honestly and in good faith. This is true even if you were to believe that the union was in error.

> \* \* \* \* \* \*

> If and only if you of the jury find that United Steelworkers of America, Local 13889, breached its legal duty of fair representation \* \* \* may you return a verdict for any of the plaintiffs and against either or both of the defendants.

> A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory or in bad faith. In order to make out such a claim of arbitrary, discriminatory or bad faith conduct there must be substantial evidence of fraud, deceitful action or dishonest conduct; this involves more than errors in judgment. Simply stated, of necessity a wide range of reasonableness must be allowed a bargaining representative in serving the employees it represents and, as a result there is no basis for second-guessing the decisions of that representative in handling a grievance absent the requisite substantial evidence of arbitrary, discriminatory or bad faith conduct. If and only if you, the jury find substantial evidence of fraud, deceitful action or dishonest conduct may you conclude that United Steelworkers of America, Local 13889 breached its duty of fair representation.

---

**15.** We find it unnecessary to decide whether the requested remedy of reinstatement of seniority classification plus back pay should be characterized in this situation as a request for purely equitable relief. If his claim were purely equitable, plaintiff Pasley might not be entitled to a jury trial. *See Lynch v. Pan American World Airways, Inc.*, 475 F.2d 764, 765 (5th Cir. 1973).

We find that this instruction clarifies that mere error on the part of a union is not sufficient to establish a breach of the duty of fair representation. Furthermore, we note that this instruction was overly generous to the union. Fraud or bad faith is not necessary to charge unfair representation if the union's conduct is otherwise arbitrary or perfunctory, *Vaca v. Sipes, supra*, 386 U.S. at 177, 87 S.Ct. 903; *Ethier v. United States Postal Service*, 590 F.2d 733, 737 n. 3 (8th Cir. 1979); *Griffin v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW*, 469 F.2d 181, 183 (4th Cir. 1972), nor must a jury necessarily find substantial evidence of fraud, deceitful action or dishonest conduct to conclude that a union breached its duty of fair representation.[16] *See Foust v. International Brotherhood of Electrical Workers*, 572 F.2d 710, 714–15 (10th Cir. 1978), *rev'd in part on other grounds*, 442 U.S. 42, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979).

Hussmann challenges the trial court's instructions to the jury relating to the resubmission of the initial arbitration award to the arbitrator. One instruction permitted the jury to enter a verdict against both defendants if it found that the resubmission violated the "final and binding" clause of the collective bargaining agreement. The other challenged instruction directed a verdict against defendants if the jury found an agreement before the resubmission between the union and Hussmann regarding the four men who should hold the classifications a breach of the union's duty of fair representation, and a breach of the collective bargaining agreement. Hussmann claims that these instructions were erroneous and prejudicial because they assumed the existence of the disputed fact and misstated the legal effect of the "final and binding" provision of the collective bargaining agreement. We disagree. The instructions explicitly provided that the jury must find breaches of both the collective bargaining agreement and the duty of fair representation and whether the resubmission to the arbitrator constituted these breaches was properly placed in the province of the jury. The jury instructions must be read as a whole, especially in the situation were the jury is presented with the case as a whole and does not make particularized determinations, but rather decides the entire case by a simple verdict assessing damages. The function of an appellate court is not to reconstruct the mental processes of the jurors, but to uphold a jury verdict if the jury has received proper instructions and reasonable inferences from the properly admitted evidence support its findings.

The union also asserts that the District Court erred when it excluded evidence of the NLRB's failure to issue a complaint after plaintiffs filed unfair labor practice charges. A trial court has wide discretion in ruling on the admissibility of evidence. *Simpson v. Norwesco, Inc.*, 583 F.2d 1007, 1013 (8th Cir. 1978); *General Insurance Co. of America v. Hercules Construction Co.*, 385 F.2d 13, 24 (8th Cir. 1967). The Federal Rule of Evidence, Rule 403, permits exclusion of evidence if the court determines that "its probative value is substantially outweighed by the danger of unfair prejudice." On balance, we do not think the decision to exclude the evidence of the NLRB's failure to issue a complaint was an abuse of discretion. The possibility of jury confusion and potential misunderstanding as to the weight to be accorded this evidence presented a danger of unfair prejudice to plaintiffs and the probative value of the evidence was not overwhelming. The NLRB general counsel has unreviewable discretion to refuse to issue an unfair labor practice complaint, and plaintiffs were not afforded a hearing before the NLRB. Furthermore the courts, not the Board, have the responsibility for defining the scope of the duty of fair representation. *See Vaca*

---

**16.** In *Butler v. Local Union 823, International Brotherhood of Teamsters*, 514 F.2d 442, 453 (8th Cir.), *cert. denied*, 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975), we approved jury instructions defining the union's duty as "a legal duty fairly to represent the plaintiff without arbitrariness, discrimination, or bad faith * * *."

*v. Sipes, supra,* 386 U.S. at 180–83, 87 S.Ct. 903.

■ Hussmann also argues for a new trial on the basis that the jury's determination of damages, of $6500 in favor of Smith and $2500 in favor of Pasley, indicates that it was confused or impassioned and inflamed because these amounts are in excess of the only tangible evidence of damages in the record, the amount of back pay lost by Smith and Pasley prior to the time of trial. The evidence, however, adequately supports the verdict. In determining the amount of damages, the jury was entitled to take into account the continuing nature of the injury sustained by plaintiffs. Plaintiff Smith lost his classification as maintenance pipefitter, and plaintiff Pasley suffered a demotion of his seniority status within the classification. From the direct evidence of compensation already lost, the jury could compute the reasonably foreseeable future losses attributable to the injury. *Cf. Richardson v. Communications Workers,* 486 F.2d 801, 806 (8th Cir. 1973). There is no indication that the amount awarded reflects damages for mental distress, imposition of which the circumstances of this case do not warrant. *See Richardson v. Communications Workers,* 443 F.2d 974, 982–85 (8th Cir. 1971). The jury was not instructed to consider punitive damages, and the award merely compensates for injuries caused by the violations of plaintiffs' rights as found by the jury.

### VI.

Plaintiffs contend that they are entitled to the damages awarded by the jury and to a judgment in accord with the advice of the jury, in response to special interrogatories, in favor of restoring plaintiffs' seniorities and classifications to their positions before the union processed grievances against them. The trial court rejected the jury's advisory recommendation at the same time it granted defendants' motions for judgment notwithstanding the verdict. In view of our holding upon appeal, we find that the District Court should have the opportunity to reconsider the advisability of implementing the jury's recommendation. In any event, the District Court is at liberty to accept or reject the advisory findings related to equitable relief. *Chicago & North Western Railway Co. v. Minnesota Transfer Railway Co.,* 371 F.2d 129, 130 (8th Cir. 1967).

### VII.

The judgment of the District Court is affirmed in part, vacated in part, and modified as set forth herein. The case is remanded to the District Court for entry of a judgment consistent with this opinion.

Costs assessed in favor of plaintiffs.

LAY, Circuit Judge, concurring.

I concur in the result reached by Judge Gibson. I do so on the narrow ground that the agreement by the company and the Union to go back to the arbitrator and to rearbitrate the preference of the plaintiffs was not disclosed to the plaintiffs. This was presented to the arbitrator without any notice whatsoever to the plaintiffs and without anyone representing their rights. I think this is the only evidence of bad faith in this record. *Cf. Buchholtz v. Swift & Co.,* 609 F.2d 317, 335 (8th Cir. 1979) (Lay, J., dissenting).

BRIGHT and ROSS, Circuit Judges, concurring.

We concur in the result reached by Judge Gibson in his opinion and concur with all of the reasoning advanced in that opinion except that portion relating to the failure of the union to properly represent the plaintiffs in the first arbitration hearing. In our judgment, the plaintiffs were adequately represented by management in that first hearing, although a jury could find that the union was derelict in not giving the plaintiffs adequate notice of the time, place and nature of the hearing.

As we view the case, the principal breach of the union's duty to represent the plaintiffs took place after the first arbitration hearing. At that time, the record indicates there was sufficient evidence of an agree-

ment between the company and the union to go back to the arbitrator and arbitrarily rearrange the order of preference among the plaintiffs and the other, more senior employees. This new agreement was not disclosed to the plaintiffs, and it was presented to the arbitrator without any notice whatsoever to the plaintiffs and without anyone representing their rights. It represented a complete abandonment of the plaintiffs and of the original position of the company by company officials without giving any reason therefor. We thus feel that there was sufficient evidence in the record to show that the union failed to act in good faith and that the company breached its collective bargaining agreement. Therefore, the jury verdict should be allowed to stand.

HEANEY, Circuit Judge, dissenting, with STEPHENSON, Circuit Judge, concurring.

We respectfully dissent with respect to those sections of the majority opinion which deal with the Union's duty of fair representation. In our view, the majority opinion is inconsistent with prior opinions of this Court and the Supreme Court.[1] It substantially undercuts the Union's right to process grievances of senior employees who complain that junior employees have been promoted to jobs for which the senior employees are equally well qualified.

The collective bargaining agreement between the Union and Hussmann Refrigerator Company provides as follows:

### ARTICLE 9

### Seniority

SECTION 1. The Company recognizes the principle of classification seniority and seniority based upon the total length of continuous service with the Company.

Seniority shall be by job classifications, unless otherwise specified below.

Seniority, skill and ability to perform the work required shall be considered by the Company in making promotions, transfers, layoffs and callbacks. Where skill and ability to perform are substantially equal, seniority shall govern. * *

* * * * * *

### [ARTICLE 10]

SECTION 2. Ability and required performance of an employee on the job shall be factors considered for promotion. When such factors are substantially equal between those being considered, seniority shall govern. * * *

* * * * * *

SECTION 3. When an employee is appointed to a new position or vacancy under the provisions of this article and it develops within a reasonable length of time that the employee is not capable of handling the position, he shall be entitled to return to his former position with full seniority accrued. Should a vacancy of like nature again present itself after a period of ninety (90) calendar days, he shall be allowed the privilege of again making application.

The Company processes approximately 35,000 bids annually. From these bids, about 2,000 jobs are awarded. The Company's practice is to waive skill and ability with respect to most jobs. No objection to this practice has been made. When vacancies arose in the maintenance pipefitter

---

1. In *Mavis v. Brotherhood of Ry., Airline & S.S. Clerks*, 585 F.2d 926 (8th Cir. 1978); *Florey v. Air Line Pilots Ass'n, Intern.*, 575 F.2d 673 (8th Cir. 1978); and *Augspurger v. Brotherhood of Locomotive Engineers*, 510 F.2d 853 (8th Cir. 1975), we held that improper motivation is the crux of the fair representation doctrine and is an essential element in fair representation actions. In *Ethier v. United States Postal Service*, 590 F.2d 733 (8th Cir. 1979), we noted in dicta that a breach of duty to fairly represent may also be found where the representation was perfunctory (without concern or with indifference), and in *Minnis v. Intern. U., United Auto.*, 531 F.2d 850 (8th Cir. 1975), we held that failure to inform an employee that a grievance would not be taken to arbitration until it was too late for the employee to take any action himself was a violation of the duty. We have never suggested that a union cannot choose between competing values if it chooses to do so without hostility or improper motivation.

classification, the Company asked for bids and numerous employees responded. The Company interviewed the employees and selected plaintiffs Smith and Pasley on the basis of what was judged to be their superior skill and ability over at least four other men who had more seniority. The four filed a grievance with the Union, contending that they had skill and ability substantially equal to that of the men selected, and that the Company had violated the contract by its action.

The grievances were processed through the first three steps of the grievance procedure by personnel of the local union. At each step, the Company took the position that the employees it selected had superior skills and ability. The Union argued that the grievants' skills and ability were substantially equal to that of Pasley and Smith, and that each had greater seniority. At the fourth step, an International representative with experience both as a pipefitter and in handling grievances was requested to take over the matter. The Company furnished him all relevant information in its possession with respect to the plaintiffs and the grievants. After reviewing the information, he decided to process the grievances to the fourth step. The Company adhered to its original position.

The representative then asked that the grievances be submitted to arbitration. An arbitrator was appointed. At the proceeding, the Company's maintenance foreman, who made the initial selection, testified at length as to the skill and ability of each person selected. He supported his testimony with documentary evidence. The grievants each testified as to their skill and ability, and the representative handling the grievance supported their testimony with documentary evidence. Pasley and Smith knew that the arbitration hearing was to take place, but neither requested an opportunity to be present and neither appeared at the arbitration hearing.

The arbitrator considered the matter carefully. He determined that two of the grievants had skills and ability substantially equal to those of Pasley and Smith and that two others did not. We quote his opinion at length as it is indicative of the thoroughness of the hearing and the decisionmaking process.

The seniority and promotion clauses, both in Article 9 and Article 10 of the Contract between the parties, express what is usually referred to as a "modified seniority clause." That is, under the terms of the Contract seniority is to prevail only when the other factors of ability and required performance of an employee on the job are substantially equal between those being considered. * * *

Certainly the existence of the disqualification clause in Section 3 of Article 10 indicates that trial periods are contemplated by the parties and the Company is not bound by the promotion of an incapable employee. Certainly the existence of a rate progression in the pipe fitter classification indicates some on-the-job learning is contemplated after promotion to that classification before the applicant will possess all of the skills of a competent maintenance pipe fitter. While the implication of these latter two provisions is indicative that some liberality should be indulged in by the intent of the parties by making promotions, where possible, within the plant and by seniority, their existence does not annul the clear provisions of Article 10, Section 2, and Article 9, Section 1, which provide that ability and the required performance on the job are to be the governing factors, and seniority is to prevail only when these factors are substantially equal. These provisions clearly grant to the Company the right to consider ability and to promote a junior employee over a senior one, where the junior is significantly more qualified.

* * * * * *

[T]he ultimate inquiry must be whether or not the Grievants possessed ability for the required performance of a pipe fitter substantially equal to the successful bidders. If they did, the Company must be regarded as having violated their seniority rights for having failed to select them. If they did not, the Company did not violate the contract.

* * * * * *

[T]he evidence shows that Grievant Dattilo did possess the qualifications for the Maintenance Pipe Fitter Job, according to Foreman Schwartz, although Schwartz considered Paisley [sic] more qualified. Although Schwartz, in Dattilo's case, did not give particular consideration to the fact that Dattilo had been a refrigeration mechanic and general maintenance man, in the case of the successful bidders Smith and Serini he did consider this because it reflected an ability to braze and do other tasks. It is also significant that he felt that Smith and Serini's background with refrigeration and airconditioning was significant, and that Mr. Dattilo had some ninety hours of formal training in these fields. While Mr. Paisley [sic] had substantial general background in plumbing due to his work outside of the Company, Mr. Dattilo had also done, in addition to some home plumbing, some fitting in the Company as a general maintenance man, and was specifically familiar with the air system on the Randsberg Paint System within the Company. Mr. Schwartz' admission that the question between Dattilo and Paisley [sic] was very close is a strong indication that the factors of ability and required performance were substantially equal. The bare fact that Paisley [sic] may have been more qualified did not entitle the Company to disregard Dattilo's seniority, if the difference in qualification was not substantial. Under the terms of the contract seniority is to govern if the ability is substantially equal. Thus to disregard seniority the differential in qualifications must be significant. Since the differential in qualifications was acknowledged to be very close, it must be regarded that Dattilo and Paisley [sic] were substantially equal in qualifications, even though Paisley [sic] may have been the more qualified of the two.

It must be further noted that although the evidence phrased the relative qualifications of Dattilo against Paisley [sic], Dattilo had bid all four positions, had greater seniority than all of the successful bidders, and was, therefore entitled to be considered also in relation to Watson, Serini, and Smith, the other successful bidders. In comparison to those men, Mr. Dattilo's qualifications do not oppose ten years experience as an outside plumber, and whatever edge that gave Paisley [sic] is eliminated. Under these circumstances the admittedly close differential in qualifications between Paisley [sic] and Dattilo probably does not render their qualifications substantially unequal but, in any event, as compared to Watson, Serini, and Smith, this differential is reduced further. It follows that under the terms of the contract Dattilo enjoyed substantially equal qualifications and was entitled to be awarded the job of Maintenance Pipe Fitter.

\* \* \* \* \* \*

Mr. Krassinger had substantial plumbing experience, which the Company regarded as important in awarding the jobs to Paisley [sic] and Watson. This had been more than merely occasional home repair. Mr. Krassinger had, in fact, done the entire plumbing on his own home and done two others as a contractor, besides working for a plumbing contractor as a second job. Under the evidence this constitutes a very substantial amount of bid related work, and the evidence from Mr. Krassinger was that he was familiar with many of the aspects of the trade which Mr. Schwartz considered important with the other applicants, including copper tubing, soil pipe, sewer piping, and working with leaded joints. He also testified to some experience with air valves, soldering drains, and other like work. All of this constitutes substantial pipe fitter related ability. Mr. Krassinger also bid all postings and was entitled to be compared with all of the successful bidders. As the evidence was detailed, his abilities appear to be very comparable to Serini, over whom he has seniority, and, as the evidence was presented, I do find that the qualification factors were substantially equal between those two. Accordingly, Mr. Krassinger's seniority was entitled to consideration. While Mr. Krassinger also

1250

enjoyed seniority over Mr. Paisley [sic], I do find the [sic] the Company had grounds to find that Paisley [sic] had substantially greater ability and it follows that Mr. Krassinger would not have been entitled to have been a successful bidder until May 23rd when Serini was awarded the job.

*Supplemental and Corrective Decision of Arbitrator,* pp. 11–12, 14–18.

The plaintiffs were dissatisfied with the arbitration award and commenced this action. The District Court eventually held that the Union did not breach its duty to fairly represent the plaintiffs by processing the senior employees' grievances. A majority of this Court has now reversed that holding. It appears to hold that if a union is a party to a collective bargaining agreement containing a modified seniority clause, it cannot represent senior employees as against junior employees who have been tentatively selected by the Company for their skill and ability unless it first conducts an internal hearing or an intensive investigation to determine whether, in fact, the senior employees' skill and ability is substantially equal to that of the junior employee.

The majority opinion appears to be partially based on a lack of appreciation of the principle of seniority. Seniority is deemed so important by employees that it is embodied, in one form or another, in virtually every collective bargaining agreement.[2] Seniority will probably always be a primary concern of unions[3] just as skill and ability will probably always be primary concerns of management.[4] The modified seniority rule represents an attempt to reconcile the union's concern for seniority with management's concern for skill and ability by requiring that seniority prevail if skill and ability are substantially equal.[5] The ulti-

2. See Aaron, *Reflections on the Legal Nature and Enforceability of Seniority Rights,* 75 Harv. L.Rev. 1532, 1534 (1962).

3. It is difficult to overstate the importance attached by the workers to union controls of this nature. The feeling of independence, the relief from insecurity attendant upon the rationalization of personnel policies can be appreciated only when contrasted with the feeling of subservience and the despised need for bootlicking of previous days. Nowhere is this truer than in the large corporation.

* * * * * *

To eliminate such favoritism and willfulness, the unions have sought and obtained a sharing of authority in the areas of concern. The seniority principle is its answer to situations such as that described above. To charges that seniority gives no heed to a man's ability or even his need, a union man will reply that at least it is objective. He knows where he stands. There is a rule, and a union to enforce it on his behalf.

Chamberlain, The Union Challenge to Management Control 93–94 (1948).

4. In the collective bargaining process, the seniority factor is there at the insistence of the union, and it is management which insists on the protective flexibility of the equal-ability requirement. It is a management judgment that the junior employee has such superior ability that seniority may be ignored. The union is the defender of the seniority concept and can be expected to grieve in all promotion-bypass cases except those in which the senior employee is clearly unquali-

fied (and even a fair number of those situations get taken up). It is novel to assert that the union has a duty to make its own determination of the qualifications of the junior employee as a prerequisite to supporting the grievance of the passed-over senior. Further, it is unrealistic to consider the two employees as being on the same footing as far as the contract and the union's duty are concerned. W. Murphy, *Due Process and Fair Representation in the Public Sector,* Proceedings of the Thirtieth Annual Meeting, National Academy of Arbitrators, BNA 139–140 (1977).

5. In *Butler v. Local U. 823, Int. Bro. of Teamsters,* 514 F.2d 442 (8th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975), the operations of two plants of a corporation were consolidated into the newer of the two plants. The national agreement covering both plants provided that when two plants were consolidated in this fashion, seniority would be governed by the length of service with the company. Application of the rule would have resulted in almost all of the employees from the older, abandoned plant retaining their jobs and the employees of the newer plant being laid off. To avoid this result, the local union and management agreed to slot the employees according to relative seniority in each plant rather than straight company seniority. When the older employees of the abandoned plant filed grievances, the local union refused to process them. We held that the local union had violated its duty to represent the employees fairly because it had breached its duty to insist that the employer adhere to the contract which re-

mate decision in the case of a dispute is given to the arbitrator. We should leave it there.[6]

The majority opinion effectively rewrites this and thousands of similar collective bargaining agreements. It places an intolerable burden on bargaining unit representatives. In every case where two or more persons bid for vacancies, a union will have no practical alternative but to hold an internal union hearing comporting with minimum due process standards to determine whether any of the senior employees who bid for the job have skills and abilities substantially equal to those of the junior employee awarded the position. No matter how a union decides this issue, however, the problem will not be resolved. If the senior employee loses before the union tribunal, he may well bring an action against the union for failure to fairly represent him. If the senior employee wins before the union tribunal, he will still have to proceed to arbitration. The new procedure will waste time, increase back pay awards and keep the unions in constant turmoil. The present procedure of processing apparently meritorious claims of senior employees not only comports with the specific language of the agreement but also protects the rights of members and insures industrial peace.[7]

The majority quotes from *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), in its opinion. The opinion does not, however, support the panel's decision. To the contrary, the view espoused by the panel is rejected.

> [W]e are not ready to find a breach of the collective bargaining agent's duty of fair representation in taking a good faith position contrary to that of some individuals whom it represents nor in supporting the position of one group of employees against that of another. * * * "Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion." [*Ford Motor Co. v. Huffman*, 345 U.S. 330, 338, 73 S.Ct. 681, 97 L.Ed. 1048 (1953).] Just as a union must be free to sift out wholly frivolous grievances which would only clog the grievance process, so it must be free to take a position on the not so frivolous disputes. Nor should it be neutralized when the issue is chiefly between two sets of employees. Conflict between employees represented by the same union is a recurring fact. To remove or gag the union in these cases would surely weaken the collective bargaining and grievance processes.

As far as this record shows, the union took its position honestly, in good faith and without hostility or arbitrary discrimination. After Dealers absorbed the Louisville business of E & L, there were fewer jobs at Dealers than there were Dealers and E & L drivers. One group or

---

sulted in discrimination against the senior employees. Thus, we recognized the agreement between the parties and insisted that it be upheld although a merger of the seniority list might have appeared equitable.

**6.** We have no right to overturn the arbitrator's decision since it clearly drew its essence from the collective bargaining agreement. *United Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); *Kewanee Machinery v. Local U. No. 21, Intern. Bro.*, 593 F.2d 314 (8th Cir. 1979); *Local 4076, United Steelworkers v. United Steelworkers*, 338 F.Supp. 1154 (W.D.Pa.1972).

**7.** The Union's decision to process the grievances of the four senior employees was not based on a blind adherence to the seniority principle. The grievances were taken to arbitration only after a staff representative of the United Steelworkers International Union reviewed the work and experience records of the employees appointed to the job by the Company and the grievants. Nothing in the record supports the panel's contention that the Union takes every grievance of every senior employee who claims a job by seniority to arbitration.

the other was going to suffer. If any E & L drivers were to be hired at Dealers either they or the Dealers drivers would not have the seniority which they had previously enjoyed. Inevitably the absorption would hurt someone. By choosing to integrate seniority lists based upon length of service at either company, the union acted upon wholly relevant considerations, not upon capricious or arbitrary factors. The evidence shows no breach by the union of its duty of fair representation.

*Id.* at 349–350, 84 S.Ct. at 371.

The majority also cites a number of cases for the proposition that the Union's decision to process the grievances of senior employees without first providing some type of hearing to the applicants manifested an arbitrary and perfunctory approach to handling the matter. We find them to be inapposite.

In *Griffin v. International U., United Automobile, A. & A. I. W.,* 469 F.2d 181 (4th Cir. 1972), a bargaining agent was found to have breached its duty to fairly represent an employee discharged for fighting. Although the bargaining agent filed a grievance contesting the discharge with the supervisor involved in the fight, it subsequently refused to process the grievance because of friendship between the union president and the supervisor.

In *De Arroyo v. Sindicato de Trabajadores Packing., AFL–CIO,* 425 F.2d 281 (1st Cir.), *cert. denied,* 400 U.S. 877, 91 S.Ct. 117, 27 L.Ed.2d 114 (1970), six employees were discharged when the plant was automated. They filed grievances contending that employees with less seniority had been retained on the payroll by the company. The bargaining agent was found to have breached its duty to represent the employees fairly by failing to investigate the employees' claim that junior employees had been retained on the job in preference to them.

In *Foust v. International Broth. of Elec. Workers,* 572 F.2d 710 (10th Cir. 1978), an employee was discharged for failure to report for duty at the expiration of a leave of absence. He asked his bargaining agent to file a grievance on his behalf. The bargaining agent failed to file a grievance within sixty days as required by the collective bargaining agreement, giving no reasonable excuse for failing to do so.

In *Minnis v. Intern. U., United Auto., Aerospace, Etc.,* 531 F.2d 850 (8th Cir. 1975), an employee was discharged for falsifying a medical form necessary to receive back pay. The bargaining agent processed the grievance through the first three steps of the process and then informed the company that it would not take the matter to arbitration. The bargaining agent was found to have violated its duty of fair representation because it failed to inform the employee of its decision not to arbitrate the matter until six months after it had made the decision.

In *Ruzicka v. General Motors Corporation,* 523 F.2d 306 (6th Cir. 1975), an employee was discharged for intoxication. The bargaining agent processed his grievance through the first two stages of the grievance procedure, but inexplicably neglected to take the grievance through the third stage of the process. It failed to inform the employee that it was not going to continue with the matter. Again, the bargaining agent was found to have violated its duty to represent the employee fairly because of this failure.

A common thread runs through *De Arroyo, Foust, Minnis* and *Ruzicka.* In each case, the bargaining representative was grossly or inexplicably negligent in failing to process a grievance submitted to it by an employee without a sound reason for its decision. *Compare Ethier v. United States Postal Service,* 590 F.2d 733 (8th Cir. 1979). In *Griffin,* there were allegations of bad faith. Here, there are neither allegations of gross or inexplicable negligence nor of bad faith. We simply have a case in which the Union has made a conscious assessment of competing values and has made that assessment consistent with past practice. We must, therefore, reject the majority's contention that "[t]he Union's choice to process all grievances based on seniority discriminated against employees receiving promotions on the basis of merit."

The majority's alternative reason for overruling the district court stands on equally shaky grounds. It states that the "jury could also have found evidence of a breach of the duty of fair representation on the basis that the union failed to notify plaintiffs of the arbitration hearing or invite them to attend."

We agree that failing to notify union members of an arbitration hearing or refusing to permit them to attend and present their own case might, in some cases, constitute grounds for finding a breach of the duty of fair representation. *See Bond v. Local Un. 823, Int. Br. of T., C., W. & H. of America,* 521 F.2d 5 (8th Cir. 1975). *Contra, Ramsey v. N. L. R. B.,* 327 F.2d 784 (7th Cir.), *cert. denied,* 377 U.S. 1003, 84 S.Ct. 1938, 12 L.Ed.2d 1052 (1964). Here, however, the plaintiffs knew that the arbitration hearing would be held and did not ask to attend. The plaintiffs had presented their case on skill and ability to management, and management presented that same case to the arbitrator. The plaintiffs made no claim that they could have presented additional evidence to the arbitrator that was not merely cumulative. They made no showing that the result would have been different had the matter been differently presented. Under these circumstances, the trial court properly refused to speculate as to what would have been added by their presence. *See Humphrey v. Moore, supra* 375 U.S. at 351, 84 S.Ct. 363; *Deboles v. Trans World Airlines, Inc.,* 552 F.2d 1005 (3rd Cir.), *cert. denied,* 434 U.S. 837, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977). *See also Cronin v. Sears, Roebuck & Co.,* 588 F.2d 616 (8th Cir. 1978).

Moreover, even if we were to hold that junior employees must be invited to attend arbitration proceedings and be given a chance to present their own case on skill and ability, and that the Union breached its duty by failing to extend such an invitation, we do not know whether the jury found liability on the first or second theory since they were submitted conjunctively. Thus, a remand for a new trial on this theory would be required rather than a reinstatement of the jury's verdict. *See Superior Combustion Industries v. Schollman Bros. Co.,* 271 F.2d 357 (8th Cir. 1959).

Accordingly, we would affirm the District Court.

Before LAY, Chief Judge, HEANEY, BRIGHT, ROSS, STEPHENSON, HENLEY and McMILLIAN, Circuit Judges.

## ORDER ON PETITION FOR REHEARING

The petition for rehearing is denied.

We observe that the petition of Hussmann Refrigerator Company reflects some confusion as to the precise holding of the court in this case. In light of the several opinions written, this court believes it might be appropriate to summarize below the determinations made by the majority.

1) In this case, relating to a dispute between junior and senior employees, the evidence failed to establish that the Union breached its duty of fair representation to appellants Smith, Pasley, and Serini at the first arbitration by advocating the promotion of employees senior to appellants.

2) The subsequent collaboration between the employer, Hussmann Refrigerator Company, and the Union, for the purpose of obtaining a modification of the previous arbitration award, without notice or opportunity to junior employees Smith, Pasley, and Serini to protect their rights, operated to deprive appellants of valuable employment rights and constituted sufficient evidence in this case for a jury to decide that the Union had breached its duty of fair representation to appellants and that the Company had breached its collective bargaining agreement.

3) The damage award is sustained. The appellants' claim for equitable relief is remanded to the district court in accordance with part VI of the opinion.

We join in this order for purposes of clarification, notwithstanding adherence to separate views as set forth in the opinion of then Chief Judge Gibson, joined by Judges

Henley and McMillian, the concurring opinion of Judge Lay, now Chief Judge, the separate concurrence of Judges Bright and Ross, and the dissent of Judges Heaney and Stephenson.